**UNITED STATES of America, Plaintiff,**

v.

**Helen KRAMER, et al., Defendants.**

v.

**AMERICAN CYANAMID COMPANY, et al., Third Party Plaintiffs,**

v.

**A. MARIANNI'S SONS, INC., et al., Third Party Defendants.**

**Civ. A. No. 89–4340(JFG).**

United States District Court, D. New Jersey.

Feb. 8, 1991.

United States Dept. of Justice, Environment & Natural Resources Div. by Bernard P. Bell, Washington, D.C., U.S.E.P.A., Office of Regional Counsel by Rudolph S. Perez, and U.S. Atty. by Louis Bizzarri, Asst. U.S. Atty., Camden, N.J., for plaintiff, U.S.

Podvey, Sachs, Meanor & Catenacci by H. Curtis Meanor, Newark, N.J., and Shea & Gould by Norman W. Bernstein, New York City, for defendant, UNISYS Corp.

Connell, Foley & Geiser by Frank A. Lattal, Roseland, N.J., and Sidley & Austin by Langley R. Shook, Washington, D.C., for defendant, W.R. Grace & Co.-Conn.

Levin & Hluchan by Glenn A. Harris, Marlton, N.J., for defendant Atochem, Inc., and American Nat. Can Co.

Brown and Connery by Jane A. Lorber, Westmont, N.J., and Reed, Smith, Shaw & McClay by Louis A. Naugle, Pittsburgh, Pa., for defendant, NVF Co., Inc.

Lowenstein, Sandler, Kohl, Fisher & Boylan by Richard F. Ricci, Roseland, N.J., for defendant, Olin Corp.

Deasey, Mahoney & Bender, Cherry Hill, N.J., for defendant, General Metalcraft, Inc.

Picco, Mack, Kennedy, Jaffe, Perrella & Yoskin by Kenneth H. Mack, Trenton, N.J. and Morgan, Lewis & Bockius by Denis V. Brenan, Michael R. Dillon, Kathleen R. Welsh, Philadelphia, Pa., for defendant, ICI Americas Inc.

Pitney, Hardin, Kipp & Szuch by William Hyatt, David W. Payne, Morristown, N.J., for defendant, American Cyanamid Co., Continental Can Co., E.I. DuPont de Nemours & Co., and Rohm and Haas Co.

Sive, Paget & Riesel, P.C. by Pamela Esterman, New York City, for defendant, N.L. Industries.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Ruth V. Rosenberg, Newark, N.J., for defendant, Cole Office Environments, Div. of Joyce Intern., Inc.

Archer & Greiner by Christopher R. Gibson, Haddonfield, N.J., for defendants, Morton Intern. Inc. and Bridgestone/Firestone, Inc.

Duane, Morris & Heckscher by Seth V.D.H. Colley, Medford, N.J., for defendant, The Gilbert Spruance Co.

Wilson, Elser, Moskowitz, Edelman & Dicker by Joseph T. Walsh, III, Newark, N.J., for defendant, Albert J. Mitchell.

Blackburn, Michelman & Tyndall by David F. Michelman, Cherry Hill, N.J., for defendant, Globe Disposal Co.

Riker, Danzig, Scherer, Hyland & Perretti by Dennis J. Krumholz, Andrew J. Perel, Morristown, N.J., for defendant, Nabisco, Inc.

Schnader, Harrison, Segal & Lewis by Marianne E. Brown, David G. Battis, James W. Gicking, Philadelphia, Pa., for defendant, The Lehigh Press, Inc.

Robinson, St. John & Wayne by Lisa Agresti Carey, Newark, N.J., for defendant, Helen Kramer.

Michael N. Becci, Associate Corporate Counsel, Newton, Pa., for third party defendant, Standard Pressed Steel Co.

Fox and Fox by Gabriel H. Halpern, Newark, N.J., for third party defendant, Reagent Chemical & Research, Inc.

Katzenbach, Gildea & Rudner by Ezra D. Rosenberg, Lawrenceville, N.J., for third party defendant, Boeing Co., Vertol Div.

Caplan & Luber by Steven N. Yermish, Cherry Hill, N.J., for third party defendants, Simon Wrecking Co., Inc. and Mid-State Trading Co.

De Marco & Fiore, Hammonton, N.J., for third party defendant, United Asphalt Co., Inc.

Riesenburger & Kizner, Vineland, N.J., for defendant and third party plaintiffs, A. Marianni's Sons, Inc.

Durkin & Durkin by Thomas E. Durkin, Jr., Dennis A. Durkin, Newark, N.J., for third party defendant, Mayco Oil & Chemical Co.

Manta and Welge by Joel Schneider, Cherry Hill, N.J., for defendant, Rollins Environmental Services, (NJ) Inc.

Hannoch Weisman by A. Patrick Nucciarone, Roseland, N.J., for third party defendant, Bessemer (Kingsland).

## OPINION

GERRY, Chief Judge:

This matter is before the court on plaintiff's Rule 12(f) motion to strike approximately 200 of nearly 300 affirmative defenses set forth in the answers of 16 of the now 29 defendants. Plaintiff, United States ("the Government"), brought this case pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607, to recover response costs expended at the Helen Kramer Landfill ("the Site") in Mantua, New Jersey. To narrow the issues and reduce the time and expense of discovery, the Government moves to strike all defenses other than those specified by section 107(b), because section 107(a) restricts defendants to the three section 107(b) defenses, making all other affirmative defenses legally insufficient.

The 16 defendants [1] whose affirmative defenses are at issue have filed a joint memorandum opposing the striking of their equitable and constitutional defenses. [2] They argue first that constitutional defenses may always be asserted and cannot be cut off by statute. Second, because CERCLA must be read as a whole and all of its provisions given effect, defenses are available which arise under those sections of CERCLA and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., that are necessary to the implementation of section 107. [3] Third, defendants should be permitted to assert all the defenses that courts have held to be relevant to any CERCLA joint and several liability determination.

---

1. UNISYS Corporation ("U"), American Cyanamid & Company ("AC"), American National Can Company, E.I. Dupont de Nemours & Company, Monsanto Company, Rohm and Haas Company, ICI Americas, Inc. ("ICI"), Olin Corporation ("O"), W.R. Grace & Company—Conn. ("WR"), NL Industries, Inc. ("NL"), Polyrez Chemical Division of Atochem, Inc. ("Atochem" or "A"), NVF Company, Inc. ("NVF"), Joyce International, Inc.—Cole Office Environment Division ("Cole" or "C"), Morton International, Inc. ("Morton" or "M"), Bridgestone/Firestone, Inc., and General Metalcraft ("GM").

2. In addition, some defendants have filed independent memoranda.

3. American Cyanamid further contends that "[a]dditional reliance by the plaintiff on CERCLA Section 113(g)(2) ... is inconsistent with [plaintiff's] basic position that ... [section] 107 stands alone and must be taken out of context (and is consistent with [AC's] point that the statute must be read as a whole)."

Moreover, defendants assert that they intend to assert a counterclaim against the Government, should discovery reveal that the Government itself was a significant generator of hazardous substances at the Site. Such a counterclaim, defendants argue, will change the character of the case from a section 107(a) collection action to "a hybrid which possesses features of both CERCLA Sections 107 and 113 ... [with] a sufficient Section 113 equitable allocation component to allow Defendants to plead equitable defenses." Defendants' Joint Supplemental Memo at 2.[4]

■ At oral argument on September 7, 1990, defendants argued that the outcome of the Government's motion to strike non-107(b) affirmative defenses makes no practical difference to the posture of the case, because if the court strikes the defenses, the same arguments will be raised by defendants in their section 113 counterclaims for contribution, brought simultaneously in this suit with the Government's section 107 claim. The Government responded that "the very real and very practical difference" arises on a motion for summary judgment, because a counterclaim is not a defense to liability while affirmative defenses are. Transcript of Oral Argument on September 7, 1990 ("Tr.") at 30, 8–13.[5]

Were the court to strike the affirmative defenses, the likely practical consequence would be that the Government would be prepared to move for summary judgment on its section 107 claim well before defendants were ready to so move on their sec-tion 113 counterclaims. Defendants could be found jointly and severally liable for *all* response costs long before they would be ready to prove that other potentially responsible parties ("PRPs")—including perhaps the Government itself—were liable for *part* of those costs. Thus, as the Government argues, whether defendants' affirmative defenses remain part of the Government's section 107(a) claim, or are stricken now and revived later as part of defendants' section 113(f)(2) counterclaims, "is not an artificial distinction, it's a distinction with a very real difference." Tr. 30, 13–14.

For the following reasons we will grant plaintiff's motion and strike all the affirmative defenses before us, with the exception of defenses alleging divisibility of the harm as they pertain to joint and several liability.[6]

## I. BACKGROUND

The Helen Kramer Landfill is an inactive landfill in Mantua, New Jersey. From approximately 1963 to 1981, the 77–acre site was used for the disposal of municipal garbage and industrial waste. The State of New Jersey revoked the landfill registration in early 1981, and on March 3, 1981, a New Jersey state court ordered the landfill to cease operations.

On September 8, 1983, the Environmental Protection Agency ("EPA") placed the Helen Kramer Landfill on the National Priorities List ("NPL"), a list of the nation's most threatening hazardous waste sites.

---

**4.** For purposes of this motion, we will assume that discovery will support defendants' assertion that the Government was a generator that disposed of hazardous substances at the Site. It is therefore immaterial whether such discovery has been given to defendants, although we note that Magistrate Simandle entered an order on September 27, 1990 permitting discovery against federal facilities.

Defendants do not argue that the Government's potential liability bars it from bringing a cost recovery action under section 107(a), but rather that "there is a sufficient CERCLA Section 113(f)(1) component to this case for the Court to treat this action, at least in part, as one for equitable allocation between plaintiff and defendants with the attendant opportunity to raise equitable defenses." Defendants' Letter of August 31, 1990, pp. 1–2. Defendants read sec-tion 113(f)(1) to "allow a party to raise *a defense or a counterclaim* of contribution." Defendants' Supplemental Memo at 8 (emphasis added). Defendants collapse the distinction between "a defense" and "a counterclaim," while the statute uses only the word "claim," not defense. The court will "treat this action, at least in part, as one for equitable allocation," but will do so in the context of the section 113 claim raised in the third-party complaint, not in considering plaintiff's section 107 claim.

**5.** Transcript references such as "30, 8–13" mean "page 30, lines 8–13."

**6.** We will not strike GM 24, U 17, NVF 15, A 29, O 16, or AC 11. (The Government did not move to strike either M 16 or C 12, which allege divisibility.) We will strike all others challenged by the government.

It now ranks fourth on that list. 42 U.S.C. § 9605(a); 40 C.F.R. Part 300, Appendix B.

Pursuant to section 104 of CERCLA, 42 U.S.C. § 9604, EPA conducted a Remedial Investigation and Feasibility Study ("RI/FS") from July 1983 until September 1985 to investigate contamination at the Site, at an alleged cost of over $2 million.

On October 16, 1989, plaintiff filed a complaint against 22 defendants, asserting claims under section 107 CERCLA, 42 U.S.C. § 9601 *et seq.* The complaint was amended on May 8, 1990 to name additional defendants and change the language regarding the declaratory judgment sought. The first amended complaint ("Am.Comp.") names 29 defendants and seeks: (1) a judgment against all defendants, jointly and severally, for all response costs[7] incurred by plaintiff at the Site (alleged to be already at least $4.6 million);[8] (2) a declaratory judgment that defendants are jointly and severally liable for all future response costs arising from releases and threatened releases of hazardous substances[9] at the Site, pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2); and (3) an award of attorneys' fees and costs.

The amended complaint alleges, among other things, that the 16 defendants whose affirmative defenses are at issue on this motion are liable under section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances at the Site, within the meaning of section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3). Further, defendants are jointly and severally liable to plaintiff under section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

On November 20, 1990, 13 defendants[10] filed a third-party complaint on behalf of themselves and all other defendants in this action,[11] naming more than 250 defendants, including 17 local governments. The third-party complaint seeks contribution pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f), and asserts that plaintiffs "have a right of contribution ... against each and every generator, transporter, owner/operator, and all such persons referenced in § 107(a) of CERCLA." Third–Party Complaint at 9. Some of the local government authorities named are alleged to have contributed "large amounts of liquid sewage sludge containing hazardous substances and properties [to] ... the Helen Kramer Landfill," including "inorganic chemicals, metals, and organic constituents that are hazardous substances, and have, among other things, significantly caused and/or contributed to the high chemical oxygen demand ("COD") and excessively large amounts of methane gas prevalent at the site." *Id.*, § VI, p. 60.[12] Other local

---

**7.** Under CERCLA, the term "response" means remove, removal, remedy and remedial action, including enforcement activities. 42 U.S.C. § 9601(25).

**8.** EPA recently entered into a $55–million contract with IT Corporation to perform the remedial action at the Site. Morton Int'l Memorandum In Opposition To United States' Motion to Strike Its Separate Defenses, at p. 4.

**9.** CERCLA defines "hazardous substance" to include "hazardous wastes" as listed under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6991, and "hazardous substances" under Section 311 of the Clean Water Act, 33 U.S.C. § 1321. Any substance within these categories is a hazardous substance under CERCLA. 42 U.S.C. § 9601(14).

**10.** American Cyanamid, Atochem, Bridgestone/Firestone, Inc., Continental Can, Dupont, General Metalcraft, Morton, NL, Nabisco, Inc., Olin, Rohm and Haas, UNISYS, and W.R. Grace are the third-party plaintiffs.

**11.** Defendants were given 60 days in which to opt out as plaintiffs in the third-party complaint. Only Moore Products Company elected to opt out, thereby leaving 28 of the 29 defendants in the first amended complaint as plaintiffs in the third-party complaint. *See* Amendment to Case Management Order No. 3, ¶ 36. In addition, on January 24, 1991, defendant Globe Disposal Co. opted out as to third-party defendants 20th Century Refuse Removal Co. & A. Marianni's Sons, Inc.

**12.** Borough of Audubon, New Jersey (250,000 gallons); Borough of Doylestown, Pennsylvania (215,000 gallons); Gloucester County and the Gloucester County Sewerage Authority, New Jersey (5,000,000 gallons); Borough of Lindenwold, New Jersey (2,500,000 gallons); Township of Maple Shade, New Jersey (350,000 gallons);

governments are named as generators of "large amounts of municipal and industrial wastes containing hazardous substances [which] were transported to and disposed of at the Helen Kramer Landfill." *Id.,* § VII, ¶ H, pp. 63–64.[13]

The third-party complaint seeks a declaratory judgment that, pursuant to § 113(f) of CERCLA, the third-party defendants are liable to them "for recovery, reimbursement, and/or contribution toward all response costs [including interest] incurred and/or to be incurred by [t]hird–[p]arty [p]laintiffs concerning or relating in any way to the Helen Kramer Landfill Site." Further, plaintiffs seek an order requiring defendants "to immediately pay to … [p]laintiffs their share of contribution for response costs thus far incurred by [t]hird-[p]arty [p]laintiffs," including interest, and to pay third-party plaintiffs their "costs of suit, including reasonable attorneys fees," and any other relief the court "may deem equitable and just." *Id.* § XI, p. 70.

## II. FACTS ALLEGED BY DEFENDANTS

In their answers, defendants set forth the following as facts, grouped below as defendants allege they pertain to various defenses. Although described as facts, many of these are conclusions of law, and we have so identified them below. For purposes of completeness we have not excluded these conclusions, but are not bound by them for purposes of this motion.

### a) *Constitutional Defenses*

1. Municipalities located in and outside of New Jersey arranged for the disposal of wastes that contained hazardous substances. (U 8)[14]

2. The municipalities arranged for the disposal of the bulk of the wastes sent to the subject site. (U 11)

3. EPA has a policy of not asserting CERCLA liability against municipalities which arrange for the disposal of hazardous substances but does assert CERCLA liability against industries that arrange for the disposal of hazardous substances. Defendants allege that this policy deprives them of Equal Protection (a legal conclusion). (A 34, O 17–18, WR 36, GM 30, 31, NL 27, ICI 21, U 8 & 20)

4. The policy to not sue municipalities was adopted without providing defendants notice and an opportunity to comment. Defendants allege that this violates the Administrative Procedure Act and denies their due process right to be heard (legal conclusions). (U 8 & 20)

### b) *Statutory Defenses*

5. No hazardous substances for which defendants are responsible were disposed of at the landfill. (AC 10, A 34, O 10, WR 22, GM 29)

6. Some or all of the present or past costs and future costs, for which plaintiff seeks reimbursement in this action, were incurred by plaintiff as the result of acts or omissions of third parties other than employees or agents of defendants or other than one whose acts or omissions occurred

---

Township of Marlboro, New Jersey (350,000 gallons); Ocean City, New Jersey (750,000 gallons); Township of Princeton, New Jersey (1,950,000 gallons); Borough of Stratford and Stratford Sewerage Authority, New Jersey (4,500,000 gallons); Borough of Westville, and City of Woodbury, New Jersey (9,500,000 gallons).

13. Borough of Bellmawr, New Jersey "generated at least 42,500 cubic yards of household and municipal waste containing hazardous substances," *Id.* ¶ 282; Township of Deptford, New Jersey (47,500 cubic yards); Borough of Paulsboro, New Jersey (25,000 cubic yards); City of Philadelphia, Pennsylvania (1,400,000 cubic yards); Township of West Deptford, New Jersey (75,000 cubic yards).

14. References to individual defendant's answers are abbreviated as follows: "GM" for General Metalcraft, "U" for UNISYS, "NL" for NL Industries, "NVF" for NVF Company, "ICI" for ICI Americas, "W.R." for W.R. Grace, "A" for Atochem, "O" for Olin, "AC" for American Cyanamid Group (American Cyanamid Company, American National Can Company, Continental Can Company, E.I. DuPont de Nemours & Company, Monsanto Company, and Rohm and Haas Company, which have all filed a joint answer), "C" for Joyce International Inc.—Cole Office Environment Division, and "M" for Morton International. The numbers that follow the abbreviations are the affirmative defense numbers in the answers of each defendant.

in connection with a contractual relationship, existing directly or indirectly, with defendants. (AC 3 ¶ 1)

7. The costs which the Government seeks to recover are not costs of removal or remedial action response costs as that term is defined in CERCLA. (AC 5, O 5, WR 18, NL 21, ICI 18)

8. The costs were incurred in a manner which was inconsistent with the National Contingency Plan ("NCP"). (Defendants here assert a legal conclusion, but do not set forth the facts upon which it is based.) (AC 6, WR 20, GM 9, NL 17)

9. Some or all of the costs were unreasonable in amount, were duplicative, not cost effective (facts), or were not incurred in accordance with applicable law (legal conclusion). (AC 16, U 16, A 28, WR 23, GM 23, NL 10)

10. Some or all of the costs represent plaintiff's indirect costs (fact), which are not recoverable under CERCLA (legal conclusion). (AC 19)

11. Some or all of the removal or remedial action for which plaintiff allegedly incurred the costs was not in accordance with applicable law (legal conclusion), or was performed improperly, or in an unauthorized or non-cost effective manner (facts), in violation of the NCP (legal conclusion) by plaintiff or by plaintiff's contractors (facts). (AC 16, 19 & 20, NL 14)

12. On September 27, 1985 plaintiff issued a Record of Decision ("ROD") selecting certain remedial actions to be taken with respect to the landfill. (AC 23 ¶ 1)

13. Plaintiff has failed to comply with applicable law with respect to the adoption of the ROD. (Again, this is a legal conclusion couched as a fact.) (U 10)

14. In developing, issuing and implementing the ROD, plaintiff acted arbitrarily, capriciously and unreasonably (a legal conclusion), and some or all of the costs which the government seeks to recover were incurred by plaintiff in developing, issuing or implementing the ROD. (AC 23 ¶¶ 2–3)

15. Plaintiff did not determine that the removal and remedial action for which plaintiff incurred the costs would not be done properly by defendants. (AC 8 ¶ 1)

16. Some or all of the costs were incurred by plaintiff before it entered into a contract or cooperative agreement with New Jersey (fact), which violated section 104(c)(3) of CERCLA (legal conclusion.) (AC 9 ¶ 1)

17. Plaintiff failed to give the parties an opportunity to participate in the remedy selection process (fact), and was required to do so under CERCLA (legal conclusion). (NL 17)

18. Some or all of the costs were incurred by plaintiff before CERCLA became effective, or before the landfill was first listed on the National Priorities List. (AC 13 ¶ 1)

c) *Joint And Several Liability And Other Defenses*

19. The response costs allegedly expended by plaintiff at the Site were part of ordinary landfill closure costs. (U 8)

20. The harms for which plaintiff allegedly incurred the costs were and are divisible (fact), and therefore joint and several liability is not applicable, there being a reasonable basis for apportionment (legal conclusion). (AC 11, A 29, U 18, GM 24, NVF 15)

21. Plaintiff itself is a person as defined in CERCLA (legal conclusion) (AC 21 ¶ 1), and plaintiff by contract or agreement arranged for disposal or treatment of hazardous substances owned or possessed by plaintiff at the Site. (AC 21 ¶ 2)

22. Plaintiff itself is jointly and severally liable under CERCLA. (This is a pure legal conclusion). (AC 21 ¶¶ 1–4)

23. Defendants did not select the site at which their industrial wastes were disposed or deposited. (U 2)

24. Defendants exercised due care with respect to the hazardous substances referred to in the complaint, taking into consideration the characteristics of such hazardous substances, in light of all relevant facts and circumstances, and complied in full with all applicable laws. (This is a

legal conclusion.) (AC 3 ¶ 2, 2, A 31, O 11, WR 15)

25. Defendants took reasonable precautions against the foreseeable acts or omissions of third parties and the consequences that could forseeably have resulted from such acts or omissions. (This is a legal conclusion.) (AC 3 ¶ 3)

#### d) *Equitable Factors*

26. Defendants have at all times acted in good faith toward plaintiff and with respect to the Site. (This is a legal conclusion.) (AC 22 ¶ 4a, GM 28, U 19, WR 34, A a33, AC 22, J 20)

27. Defendants' contribution to the alleged harm, if at all, was *de minimis*, remote, indirect, speculative or transient. (AC 22 4c, A 7, A 22, WR 32, GM 7, NVF 16, ICI 17). (Congress anticipated that de minimis parties could be treated differently, at least for settlement purposes. 42 U.S.C. § 9622(g).)

28. Defendants never owned, operated or had any control over the landfill or its operations. (AC 22 ¶ 4d)

29. The landfill could have been operated in a safe and lawful manner by others, and would have been operated in a safe and lawful manner by others had plaintiff and other regulatory agencies exercised their supervisory authorities in a proper and effective manner, so as to prevent any release or threatened release of hazardous substances from the Site. (This is purely speculative and not a factual assertion.) (AC 22 ¶ 4e)

30. Defendants had a right to rely upon and reasonably did rely upon (legal conclusions), authorized and licensed transporters of hazardous substances, as well as the owners and operators of the landfill, to conduct their business carefully, safely, and without injury in a manner to prevent the release or threatened release of hazardous substances from the Site. (AC 22 ¶ 4(f) & (g).)

31. Defendants reasonably relied upon, and had a right to rely upon (legal conclusions) plaintiff and other regulatory authorities, to select only properly qualified transporters and owners and operators to transport hazardous substances to the Site, and to treat or dispose of hazardous substances at the Site, and to supervise the operation and closure of the Landfill so that those activities would be conducted carefully, safely, and without injury, in accordance with the requirements of applicable law, so as to prevent the release or threatened release of hazardous substances from the Landfill. (AC 22 ¶ 4h)

### III. DISCUSSION

#### a) *Standard For Striking Defenses Under Rule 12(f)*

Rule 12(f) provides, in part: "Upon motion made by a party ... the court may order stricken from the pleading any insufficient defense." Fed.R.Civ.P. 12(f). "All well-pleaded facts are taken as admitted on a motion to strike but conclusions of law or of fact do not have to be treated in that fashion. Matter outside the pleadings normally is not considered on a Rule 12(f) motion." 5A Wright & Miller, Federal Practice and Procedure: Civil 2d (Federal Practice) § 1380, pp. 655–656 (1990).

 In general, motions to strike are disfavored:

Motions to strike a defense as insufficient are not favored by the courts because of their dilatory character. Thus, even when technically appropriate and well-founded, they often are not granted in the absence of a showing of prejudice to the moving party. Nonetheless, they are a useful and appropriate tool when the parties disagree only on the legal implications to be drawn from uncontroverted facts. But even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits.

Nor will a Rule 12(f) motion be granted if there is a substantial question of fact or a mixed question of law and fact that cannot be resolved, even if it is possible

to determine the issue by drawing inferences from facts and statements that are not disputed.... In sum, a motion to strike will not be granted if the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits.

*Id.,* § 1381, pp. 672–678 (1990).

However, motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case." *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa. 1989). Still, the court's discretion is narrowly circumscribed on a motion to strike affirmative defenses. We may strike only those defenses so legally insufficient that it is beyond cavil that defendants could not prevail upon them. "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.' ... The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where ... the factual background for a case is largely undeveloped." *Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986). Here, there has been little or no opportunity for discovery and hence to develop the factual background. It would thus appear premature to strike defenses that have any possible merit, based on the facts alleged in the many answers made by defendants.

b) *CERCLA Overview*

"Congress enacted CERCLA in December 1980 '[t]o provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites,' Pub.L. No. 96–510, Stat. 2767 (1980) (purpose clause). Congress was aware when it enacted CERCLA that the costs of cleanup would exceed the Fund established by section 221 of the statute. *See, e.g.,* S.Rep. No. 848, *reprinted* in 1 Legis.Hist. at 325. Thus, dollars expended by the federal and state governments to clean up hazardous waste sites are, whenever possible, to be recovered from responsible parties through the liability scheme ... set forth in section 107. 42 U.S.C. § 9607. Section 107 imposes liability on present site owners and operators, owners and operators at the time of disposal, and specified categories of generators and transporters of hazardous substances.

In keeping with this broad liability scheme, the only substantive affirmative defenses to liability under CERCLA are those found in section 107(b). The exclusivity of section 107(b) defenses is explicitly discussed in section 107(a) which provides for liability '[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this section.' As a result of this unequivocal intent, a strong majority of courts have held that liability under CERCLA section 107(a) is subject only to the limited defenses provided in section 107(b)."

*Kelley v. Thomas Solvent Co.,* 714 F.Supp. 1439, 1445 (W.D.Mich.1989) (*"Thomas Solvent"*) (emphasis original). *See also United States v. Western Processing Co.,* 734 F.Supp. 930, 939 (W.D.Wash.1990) (*"Western Processing"*) ("In summary, the better reasoned decisions and the majority of cases have held that the limited defenses of Section 107(b) are exclusive and that equitable defenses such as unclean hands cannot be asserted because of the clear statutory language and because they would thwart the public interest.").

c) *Section 107(a) Response Cost Recovery Claims And Defenses*

Section 107(a) of CERCLA imposes liability on four classes of responsible parties for response costs incurred by the United States: 1) the owner and operator of the facility; 2) any person who owned or operated the facility at the time of disposal of any hazardous substance; 3) any person who by contract, agreement or otherwise arranged for disposal or treatment of hazardous substances owned or possessed by that person; and 4) any person who accept-

ed any hazardous substances for transport to disposal or treatment facilities selected by that person. 42 U.S.C. § 9607(a)(1)–(4).

Section 107(a) requires proof of three elements: (1) that there was a release or a threat of a release of a hazardous substance at a facility; (2) that as a result of the release or threatened release, the United States incurred response costs; and (3) that defendants fall within one of the categories of responsible parties set forth above.

Section 107(a) provides that liability shall attach "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section." 42 U.S.C. § 9607(a).

Section 107(b) exempts from liability those who,

> can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
> (1) an act of God;
> (2) an act of war;
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant …, if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could forseeably result from such acts or omissions;
> (4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b).

 Simply, the section 107(b)(3) defense is the "complete absence of causation." *United States v. Monsanto Co.*, 858 F.2d 160, 168 (4th Cir.1988), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019

(1989). That defense has three elements. A defendant must prove: (1) the release or threatened release was "caused solely by" an act or omission of an unrelated third party who was not an employee or agent of the defendant and with whom the defendant did not have a "contractual relationship"; (2) defendant exercised due care as to the hazardous substance; *and* (3) defendant took precautions against foreseeable acts or omissions of that unrelated third party. The Government asserts that no other substantive affirmative defenses beyond those in section 107(b) may be asserted.

The essential question before the court is whether defendants are limited to the section 107(b)(3) defense (since neither an act of God nor an act of war are at issue here). Plaintiff argues that the express language of section 107(a) so limits defendants, which offer a wide variety of affirmative defenses that admittedly fall outside the parameter of section 107(b)(3). Defendants argue that those defenses should not be stricken.

d) *Section 113(g)(2) Requires A Declaratory Judgment In A Section 107(a) Response Cost Recovery Action*

Before the complaint was amended, defendants cross-moved for judgment on the pleadings on the Government's claim for a declaratory judgment. Once the Government amended its complaint, and changed the language upon which defendants had based their cross-motion, as well as two affirmative defenses, then defendants withdrew their cross-motion. *See* Case Management Order ("CMO") No. 2, ¶ 28. However, defendants have not withdrawn the two affirmative defenses. They are: failure to state a claim and lack of subject matter jurisdiction regarding plaintiff's declaratory judgment claim. Since the first amended complaint changed the relevant language upon which those affirmative defenses were based, for the following reasons we shall strike them.

Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C.

§ 2201, the complaint sought a declaratory judgment that defendants are "liable for all present and future releases and threatened releases of hazardous substances at the Site." Complaint, ¶ 2 of Prayer for Relief, at p. 10. Defendants alleged that the complaint was defective because "[t]here is simply no authority for a declaration of liability for 'releases or threatened releases' in the abstract—liability is only for response costs actually incurred that are not inconsistent with the [National Contingency Plan ("NCP")]." Joint Memorandum of Law in Opposition to United States' Motion to Strike Defendants' Defenses ("Joint Memo"), p. 6.

However, the first amended complaint seeks "a declaratory judgment that the defendants are jointly and severally liable for all future *response costs* incurred by the United States in connection with the Site." *Id.*, ¶ 2 of Prayer for Relief, at p. 10 (emphasis added).

Section 113(g)(2), in relevant part, provides:

> In any [action for recovery of the costs referred to in section 107] ... the court *shall* enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

42 U.S.C. § 9613(g)(2) (emphasis added). The amended complaint seeks a declaratory judgment for "all future response costs," as specified in section 113(g)(2), which requires the court in a section 107 response costs recovery action to enter such a declaratory judgment. *See United States v. Shaner*, Civ. No. 85–1372, slip op. at 26, 1990 WL 115085, 1990 U.S.Dist. LEXIS 6893 (E.D.Pa. June 5, 1990) (section 113(g)(2) "expressly authorizes a court to enter a declaratory judgment on a PRP's liability for further response costs").

Thus, because AC's affirmative defenses of failure to state a claim and lack of subject matter jurisdiction are based on language that is no longer in the complaint, and the amended complaint conforms to the statutory form for the mandatory declaratory judgment in a section 107 cost recovery action, plaintiff states a claim for a declaratory judgment under section 113(g)(2), and the court has subject matter jurisdiction over that claim. Accordingly, both those affirmative defenses will be stricken.

#### e) *Section 113 Creates Right To Seek Contribution And Permits Equitable Defenses*

■ To compensate for the potentially unfair burden that section 107 joint and several strict liability might impose on named PRPs, when other PRPs have not been named in an action brought by the government under that section, CERCLA provides a right under section 113 for named PRPs to seek contribution from other PRPs to apportion response costs equitably. It is during this second stage of CERCLA proceedings when equitable considerations are proper.

Section 113(f)(1) provides, in relevant part: "Any person may seek contribution from any other person who is liable or potentially liable under section 107(a) ..., *during* or following any civil action under section ... 107(a).... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1) (emphasis added). Thus, defendants need not suffer undue delay in obtaining contribution under section 113, since a section 113 action may be brought "during" the pendency of a section 107(a) action. Indeed, as noted above, defendants have filed a third-party complaint seeking contribution under section 113 against more than 250 third-party defendants, including 17 local governments. Thus, the section 113(f) contribution action is being brought "during" the civil action in which the government seeks to recover its response costs pursuant to section 107(a).

In *Western Processing*, the district court wrote:

> There are two distinct contexts in which the issue of "apportionment" arises. It is critical that these two different contexts are not confused. In the

first context, the question is whether the harm resulting from two or more causes is indivisible, or whether the harm is capable of division or apportionment among separate causes. If there is a single harm that is theoretically or practically indivisible, each defendant is jointly and severally liable for the entire injury. However, if there are distinct harms that are capable of division, then liability should be apportioned according to the contribution of each defendant.

The second context in which the issue of "apportionment" arises occurs after the first inquiry regarding the indivisibility of the harm. If the defendants are found to be jointly and severally liable, any defendant may seek to limit the amount of damages it would ultimately have to pay by seeking an order of contribution apportioning the damages among the defendants.

Thus, this Court may conclude in the contribution action that Unocal has overpaid based on equitable factors and is entitled to contribution. *But the court's discretion in allocating damages among the defendants during the contribution phase does not affect the defendants' liability.* 734 F.Supp. at 938, *quoting United States v. Stringfellow,* 661 F.Supp. 1053, 1060 (C.D.Cal.1987) (emphasis added.) Thus, an affirmative defense here that the harm at the Site is distinct and divisible is proper and goes to the liability of those defendants that can demonstrate divisibility of the harm. But as *Western Processing* observed, consideration of "equitable factors" only comes into play during the contribution phase and does not affect the liability of each defendant in a section 107 action.

Similarly, section 106 contemplates equitable considerations in deciding whether to grant injunctions under that section. Under section 106 the court may consider "the equities of the case" but under section 107, in sharp contrast, PRPs have joint and several strict liability for all response costs, "[n]otwithstanding any other provision or rule of law, and subject only to the defenses" in section 107(b).

f) *Plaintiff Is Not Barred From Bringing This Section 107 Action Even If It Was A Generator, Transporter Or Operator At The Site.*

Defendants argue that discovery will reveal that the Government was a large waste generator at the Site, and will therefore be liable for contribution in an anticipated counterclaim brought pursuant to section 113. The impact of that counterclaim, defendants initially alleged, will be to change the posture of the case from a section 107 response cost recovery action to a section 113 action for contribution, made by the Government as one generator seeking contribution from other PRPs. Because equitable defenses would be available if the court construes the case as falling under section 113, that argument went, the court should refrain from striking the equitable defenses until the record is developed sufficiently to determine whether the action will be maintained under section 107 or must be brought under section 113.

Defendants' argument then evolved into an allegation that there is a "sufficient Section 113 equitable allocation component to allow Defendants to plead equitable defenses." *See* Defendants' Joint Supplemental Memo. at 2. Because the Government "is itself liable as a generator of hazardous substances found at the site and Defendants accordingly plead a right to contribution, the CERCLA section 113(f)(1) contribution provisions necessarily must be read into the underlying Section 107 claim." *Id.* at 3.

At oral argument on September 7, 1990 defendants' counsel argued that "the procedural posture that we are in ... means that the liability of the Government in this case is going to be heard now whether denominated as a counterclaim or denominated as an affirmative defense." Tr. 15, 9–15. Counsel is correct that if the United States is named as a defendant in a section 113 contribution claim brought in this action, the liability of the Government for contribution will be determined during this action, although almost certainly after defendants' joint and several liability to the

Government is determined under section 107(a).

Using the above premise as a launch point, counsel then argued that the Government's motion to strike is "absolutely and completely moot. It accomplishes nothing to advance this case to conclusion." Tr. 22, 2–4. And if not moot, then arguing over whether the affirmative defenses are only proper in the context of counterclaims is "an artificial distinction":

> [W]hat possible difference does it make to treat this as or to say the same set of facts can be asserted as a counterclaim against the United States to be heard now here but cannot be asserted as an affirmative defense to be heard against the United States now and here in mitigation of United States' claim? It's all one [and] the same thing.
>
> . . . . .
>
> [T]here seems to be an artificial distinction being sought to be made here between liability and mitigation.... The Government's liability for contributing to this site mitigates the amount that we are liable for for contributing to this site.... [O]ur position is that the government is jointly and severally liable, just like us.... [T]he government is no different as one generator than any other generator.

Tr. 15, 22 to Tr. 16, 2; Tr. 17, 7–14, 20–21; Tr. 18, 8–9.

■ The Government's potential liability for contribution does not affect this section 107(a) response cost recovery action. The Government's potential liability alters neither the type of affirmative defenses permissible under section 107(a), nor the Government's right to full recovery of its response costs. Defendants are correct that the Government's ultimate recovery of its response costs would be decreased, once it was found liable for contribution and the amount to be apportioned to it of total response costs was determined. However, it is in the nature of the claims made, that even when, as here, a section 107(a) claim co-exists in a single action with section 113 contribution claims, defendants' liability on the Government's section 107(a) claim almost certainly will be determined before the Government's liability for contribution.

■ Defendants attempt to collapse this very real practical difference in the timing of the proofs by arguing that the Government's liability for contribution "mitigates the amount that [defendants] are liable for for contributing to this site." Ultimately, they may be right, but practically, the Government recovers first, then contribution claims are resolved—even when all are comprised within one action. Defendants are also mistaken that the Government is jointly and severally liable, "just like us." As defendants recognized later during oral argument, the "liability of initial defendants sued by the Government under 107(a) ... is joint and several[, but according to judicial precedent,] ... the liability of third-party defendants is several only." Tr. 27, 3–11.

Finally, defendants are correct that, as to the Government's liability for contribution, it "is no different as one generator than any other generator." But the Government stands in a much different posture as plaintiff in a section 107(a) action, than it would as a PRP defendant in the same action, because it is the Government and not the other PRPs that has incurred the response costs at the Site. Had any other PRP—and on this motion we consider the Government to be a PRP—gone ahead and incurred response costs at the Site, then that PRP could have brought a section 107(a) recovery action, and this case would be in the same procedural posture, but with the Government as a defendant. But the brute fact is that the Government and not the named defendants has spent public monies on the cleanup, and is therefore entitled to full recovery of those monies, whatever its potential liability for contribution.

The legislative history of the Superfund Amendments of 1986 (which enacted section 113) makes clear that the United States may bring either a section 106 or 107 action, regardless of whether the United States itself was a generator of waste at the site:

This section does not affect the right of the United States to maintain a cause of action for cost recovery under Section 107 or injunctive relief under Section 106, whether or not the United States was an owner or operator of a facility or a generator of waste at the site. Where the United States has been required to pay response costs as a generator or facility owner or operator, the United States may maintain an action to recover such costs from other responsible parties.

*See* H.R.Rep. No. 253(I), 99th Cong., 2nd Sess. 1, 79–80 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2861–62.

■ The *Western Processing* court held that the government was not barred from section 107 recovery merely because it had been an operator of a hazardous waste site: "The fact that the United States is a former site operator ... does not bar a finding of liability against the defendants nor bar recovery in this [section 107(a)] action. At a future proceeding in the contribution and counterclaims action ... the United States may be found liable as a former site operator and responsible for some portion of response costs incurred at the site." 734 F.Supp. at 939–940. That court recognized that the section 113 proceeding would be the appropriate forum to consider the Government's liability for response costs. We agree.

Defendant Morton makes a slightly different argument, but toward the same end of seeking consideration of equitable factors regarding plaintiff's potential liability within the section 107(a) claim, rather than in the section 113 claim.

Morton argues that plaintiff is a liable party,[15] and that if "Morton is successful in establishing the United States' liability, this will be a contribution case. The Court will have to determine at one time who is liable, what legitimate response costs have been incurred, and what percent of equitable responsibility should be borne by the various parties." Morton Memorandum of Law in Opposition to the United States' Motion to Strike Its Separate Defenses ("Morton Memo"), at p. 7.

Morton relies on *PVO Int'l., Inc. v. Drew Chemical Corp.*, 19 ELR 20,077, 16 Chem. Waste Lit.Rep. 669 (D.N.J.1988), for the proposition that "Section 107(a) requires [the court] to allocate clean-up costs between [the parties] according to relevant, equitable factors." *Id.*, 16 Chem.Waste Lit.Rep. at 683, *quoted in* Morton Memo at 8. Thus, while not explicit in Morton's memorandum, we read Morton's argument not to be that plaintiff's liability will make this a section 113 contribution case, but that the court should apply equitable factors to allocate clean-up costs under the section 107(a) claim, rather than under the section 113 claim.[16]

*PVO* used the following reasoning:

[S]ection [107(a)] does not specifically provide for apportionment of costs between liable parties. However, Section 107(a) should be read in conjunction with the contribution provision in section 113(f)(1), which does provide for allocation of response costs "among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. sec. 9613. Congress clearly in-

15. Morton's 26th and 29th defenses (United States is a generator of hazardous substances transported to the Site).

16. A significant difference between making this a section 113 contribution action because of plaintiff's potential liability as a generator of hazardous waste at the Site, and Morton's stance that the court should consider those equitable factors regarding plaintiff's liability, but still within the context of this section 107 action, is that were we to make this a section 113 action, other "equitable factors" raised by defendants would then be open to consideration, rather than only those affecting apportionment.

The joint supplemental memorandum changes the original position of the cooperating defendants by alleging that there is a sufficient "contribution component" in this section 107 case to require consideration of equitable factors. This would seem at once to concede the government's right to seek reimbursement under section 107 (which defendants did concede at oral argument), while inviting the court to consider all equitable factors that would be considered in a section 113 contribution action. We decline the invitation.

tended courts to allocate cleanup costs between liable parties, and it would be anomalous to allocate such responsibility in contribution actions but to allow it to fall only on defendants in section 107(a) actions, regardless of any partial responsibility of the plaintiff in contaminating the property or any other factors that would make it unfair to burden the defendant with the entire cost of cleanup. Thus, I conclude that section 107(a) requires me to allocate cleanup costs between [the parties] according to relevant equitable factors.

16 Chem.Waste Lit.Rep. at 683.[17] What is implied here is that, since "Congress clearly intended courts to allocate cleanup costs between liable parties," and made provisions for such allocation in section 113 contribution actions, it also must have intended that those same equitable factors be considered and allocation be done in section 107 actions.

Collapsing the distinction between section 107 and section 113 ignores the clear language and structure of the statute. Section 107 imposes liability "[n]otwithstanding any other provision or rule of law and subject only to" the defenses set forth in section 107(b). Congress enacted section 113 as a separate section to address contribution.

We agree with *PVO* that it would be "anomalous" to permit apportionment of clean-up costs among PRPs in a section 113 action and not to permit apportionment in a section 107 action, but *only if* defendants in a section 107 action could not seek contribution in a section 113 action. But the structure of CERCLA does not preclude consideration of equitable factors, including the liability of a PRP who was (or is)

plaintiff in a section 107 action. Rather, CERCLA separates those equitable factors from section 107 and considers them in a section 113 contribution action. "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Defendants need not suffer undue delay in seeking contribution under section 113, since a section 113 action may be brought "during" the pendency of a section 107(a) action (defendants have done so here). *Id.*

Moreover, sections 107 and 113 serve distinct purposes. CERCLA was enacted to facilitate cleanup of the tens of thousands of hazardous waste sites in this country. Section 107 permits the Government or a private party to go in, clean up the mess, pay the bill, then collect *all* its costs not inconsistent with the NCP from other responsible parties—even if plaintiff was also responsible for the contamination. Any PRP is entitled under section 113 to bring a contribution action against other PRPs—including the PRP who previously cleaned up the mess and was paid for its trouble through a section 107 proceeding—to apportion costs equitably among all the PRPs. Practically speaking, section 107 permits a PRP, including the Government, to collect all its response costs, even those that that same PRP may be required to pay back to other PRPs as its equitable share in a section 113 proceeding.[18]

What might be called a windfall for a plaintiff PRP in a section 107 action serves as an incentive for private parties to clean up hazardous waste sites, to risk their own capital initially, knowing that by then prevailing in a section 107 action, they will be

---

**17.** Plaintiff PVO did "not dispute that CERCLA allows equitable allocation of costs among parties in section 107(a) actions." *Id.* Rather, plaintiff claimed that defendant Drew was "responsible for all the contamination at the site." *Id.*

**18.** A private PRP could be in the same posture as the Government here, seeking recovery of its past response costs and a declaratory judgment under section 113(g)(2) that named defendant PRPs are liable for all *future* response costs.

Thus, the plaintiff PRP might not have financed or performed the entire clean up at the time of bringing the section 107 suit. This does not, however, undercut the purpose in creating the incentive for private PRPs to clean up hazardous waste sites, which is to expedite clean up. Nor does it increase any windfall to section 107 plaintiffs who have rushed in to clean up the contamination, because they are only reimbursed for monies already spent, and can be found liable for their equitable share of future response costs in a section 113 action.

reimbursed perhaps in excess of what might be shown in a section 113 action to have been their equitable share. If the courts collapse the distinction between a section 107 and 113 proceeding, there will be less incentive for private parties to initiate clean up, since they would lose the use of that *temporary* windfall gained in a section 107 action.

Moreover, reimbursing the Government for its entire response costs in a section 107 action—whatever its own liability as a PRP—serves the important public policy of maintaining Superfund reserves for response costs at other sites.

In sum, we reject apportioning clean-up costs in a section 107 action (absent proof that the harm is divisible); CERCLA clearly provides that such apportionment is to be accomplished through a section 113 contribution action.

### g) *Defendants' Affirmative Defenses*
#### 1. *Failure To State A Claim*

Many defendants assert the defense that the complaint fails to state a claim upon which relief may be granted.[19] The amended complaint seeks relief under sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b). Under section 107(a) the government "seeks to recover costs expended, and to be expended, in response to the release or threat of release of hazardous substances into the environment at" the Site. Pursuant to section 113(g)(2)(B), the government further seeks a "declaratory judgment on the joint and several liability of the [29] named defendants for all future response costs incurred by the United States in connection with the Site." Am.Comp., ¶ 1, at p. 2.

■ To establish a prima facie case for liability under section 107, the government must show that:

(1) the site is a "facility";

(2) a "release" or "threatened release" of a "hazardous substance" from the site has occurred;

(3) the release or threatened release has caused the United States to incur response costs; and

(4) the defendants fall within at least one of the four classes of responsible persons described in section 107(a).

*United States v. Aceto Agricultural Chemicals Corp.* ("*Aceto*"), 872 F.2d 1373, 1378–79 (8th Cir.1989); *Marisol*, 725 F.Supp. at 837.

■ The amended complaint states a claim under section 107(a) of CERCLA by alleging:

(1) "From approximately 1963 to 1981, hazardous substances were disposed of at the Site," and the "Site is a facility within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9)." Am.Comp., ¶¶ 31 and 39.

(2) The soil, surface waters, air above the Site, and leachate and groundwater at the Site are all contaminated with hazardous substances. *Id.*, ¶¶ 34–37. "There were and are releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and the threat of continuing releases of hazardous substances into the environment at the Site." *Id.*, ¶ 41.

(3) "The United States has incurred 'response costs' of at least $4.6 million plus interest, and will continue to incur 'response costs' as defined in Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), to respond to the release or threatened release of hazardous substances at the Site." *Id.*, ¶ 47.

(4) Defendants fall within at least one of the four classes of responsible persons listed in section 107(a). *Id.*, ¶¶ 43–46.

Section 113(g)(2) is a companion section to section 107(a), and requires the court "to enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages." 42 U.S.C. § 9613(g)(2). The amended complaint alleges that the Government "will continue to incur 'response costs'" at the Site. *Id.*, ¶ 47. The amended complaint states a claim for a

---

19. GM 1; U 5; NL 2; NVF 1; ICI 2; WR 2; A 1; M 1, O 1; AC 1; C 2.

declaratory judgment under section 113(g)(2). *Id.,* ¶ 2 Prayer For Relief, p. 10.

Plaintiff states a claim under sections 107(a) and 113(g). Therefore, defenses of failure to state a claim are insufficient as a matter of law and will be stricken.

### 2. *Failure To Offer Proof Of Imminent And Substantial Endangerment*

■ Defendants NL Industries, Atochem and Olin assert that the Government has failed to allege or offer proof of actual or potential imminent and substantial endangerment to public health, welfare or the environment arising from the release or threatened release of hazardous substances at the Site.[20] The Government argues that these defenses should be stricken because no proof of imminent or substantial endangerment is required in a cost recovery action under section 107(a).

Section 107(a) does not require proof of imminent and substantial danger to public health, welfare, or the environment. The court will therefore strike these defenses. *Accord Marisol,* 725 F.Supp. at 837.

### 3. *Acts Or Omissions Of A Third Party*

■ Several defendants assert that any release or threat of release or any costs or damages resulting therefrom are the result of acts or omissions of third parties.[21] These defenses do not conform with the statutory requirements of section 107(b)(3) and therefore will be stricken. However, defenses that conform with section 107(b) will not be stricken, such as NVF's 11th defense.

As noted above, the section 107(b)(3) third party defense is based on "complete absence of causation" by defendant of the release or threatened release at the site. Section 107(b)(3) exempts from liability those who can establish by a preponderance of the evidence that: (1) the release or threatened release was "caused solely by" an act or omission of an unrelated third party who was not an employee or agent of the defendant and with whom the defendant did not have a "contractual relationship"; (2) defendant exercised due care as to the hazardous substance; and (3) defendant took precautions against foreseeable acts or omissions of that unrelated third party.

Third party defenses that fail to conform to the above statutory requirements of section 107(b)(3) have been stricken as insufficient. Thus, defenses stating that a third party was the "proximate cause"[22] have been found to be different from a defense alleging that the third party was the "sole cause," and must be stricken. Similarly, defenses alleging that the acts or omissions were committed by persons over whom defendants had "no control"[23] have been found to be insufficient, because the statute requires that defendants allege that those third parties were neither employees, agents, nor in a contractual relationship with defendants. *See Marisol,* 725 F.Supp. at 838–839; *Thomas Solvent,* 714 F.Supp. at 1446; *O'Neil v. Picillo,* 682 F.Supp. 706, 712 (D.R.I.1988), *aff'd,* 883 F.2d 176 (1st Cir.1989), *cert. denied sub nom. American Cyanamid Co. v. O'Neil,* —— U.S. ——, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); *United States v. Stringfellow,* 661 F.Supp. 1053, 1061 (C.D.Cal.1987); *United States v. Mottolo,* 695 F.Supp. 615, 626 (D.N.H. 1988). Similarly, defenses alleging reasonable reliance upon others to dispose of waste[24] or alleging superseding, intervening, illegal, criminal or tortious acts of third parties do not meet the statutory requirements of section 107(b)(3) and must be stricken. *Marisol,* 725 F.Supp. at 839.

### 4. *Defendants Exercised Due Care And Complied With The Law And Industry Practice, And The United States Was Negligent*

Many defendants assert that they acted in good faith and with due care and complied with all statutory, regulatory and

---

**20.** NL 24; A 40; O 10.

**21.** U 4, 23; WR 17; A 6; O 13; AC 31(f, g, h, n, o & p); M 6; C 10, 17, 26, 27, 30.

**22.** AC 31(o).

**23.** AC 31(o).

**24.** AC 31(f), 31(g), 31(h).

common law requirements regarding waste disposal.[25] UNISYS and W.R. Grace assert that they took precautions in handling and managing their materials in accordance with state of the art, trade customs and industry practice.[26] Several defendants assert that the United States was negligent, contributed materially to the harm, caused the harm, and assumed the risk of the consequences of its conduct.[27] W.R. Grace in its 9th and 10th defenses asserts that it owed no duty to the United States and could not foresee the risk of the damages alleged in the complaint.

■ CERCLA imposes strict liability. *Aceto*, 872 F.2d at 1377; *Monsanto*, 858 F.2d at 167; *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2nd Cir.1985) ("Congress intended that responsible parties be held strictly liable," subject to defenses in section 107(b)); *Artesian Water Co. v. Government of New Castle County*, 659 F.Supp. 1269, 1277 (D.Del.1987), *aff'd*, 851 F.2d 643 (3d Cir.1988); *Stringfellow*, 661 F.Supp. at 1062; *United States v. Chem–Dyne Corp.*, 572 F.Supp. 802, 805 (S.D.Ohio 1983); *United States v. Price*, 577 F.Supp. 1103, 1113–14 (D.N.J.1983) ("Though strict liability may impose harsh results on certain defendants, it is the most equitable solution in view of the alternative—forcing those who bear no responsibility for causing the damage, the taxpayers, to shoulder the full cost of the cleanup.").

Because of CERCLA's strict liability scheme and limited affirmative defenses, "defenses based upon claims that defendants were not negligent or that they exercised due care cannot be used to avoid liability." *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 204 (W.D. Mo.1985). *Accord City of Philadelphia v. Stepan Chemical Co.*, 14 Chem.Waste Lit. Rep. 982, 983–84, 1987 WL 15214 (E.D.Pa. 1987). In rejecting a defense that defendants had acted in a proper and reasonable

manner, exercised due care, complied with applicable laws and regulations, the court in *United States v. Dickerson*, 640 F.Supp. 448, 451 (D.Md.1986), held that "[t]his defense has no application to this suit, because CERCLA imposes strict liability for the classes of defendants listed in § 9607(a)(1)–(4), subject only to the very limited defenses enumerated in § 9607(b)."

Therefore, the defenses alleging due care, compliance with the law and industry practice, and foreseeability of the risk are insufficient as a matter of law and must be stricken.

■ Similarly, the defense that the United States was contributorily negligent, caused the harm at the Site or assumed the risk of harm at the Site, are all insufficient and must be stricken. These defenses in essence allege a third-party defense that falls outside the parameters of section 107(b)(3). Moreover, defendants may assert these claims in their section 113 contribution claim.

### 5. *No Direct Or Proximate Cause*

■ Several defendants argue that their conduct was not the cause in fact or proximate cause of the releases or threatened releases at the Site.[28] As the government argues, CERCLA establishes liability without regard to traditional tort notions of causation. "Interpreting section 9607(a)(1) [or (a)(3)] as including a causation requirement makes superfluous the affirmative defenses provided in section 9607(b), each of which carves out from liability an exception based on causation. Without a clear congressional command otherwise, we will not construe a statute in any way that makes some of its provisions surplusage." *New York v. Shore Realty Corp.*, 759 F.2d at 1044. *See also United States v. Maryland Bank & Trust Co.*, 632 F.Supp. 573, 576 (D.Md.1986) ("Section 107 imposes strict liability ... without regard for causa-

---

**25.** GM 26 & 28; U 2, 18, 19 & 21; NVF 13; WR 15 & 34; A 3, 31 & 33; O 11; AC 31(a, m); M 18; and C 20.

**26.** U 22; WR 16.

**27.** GM 3; U 9 & 24; NL 7 & 8; ICI 8 & 13; WR 13 & 24; A 32; O 12; M 3; C 28.

**28.** GM 6 & 22; U 25; NVF 17; ICI 12, 25, 26; A 27; WR 22 & 25; C 15, 16, 25.

tion"). The legislative history shows that "Congress specifically rejected including a causation requirement in Section 9607(a)." *Shore Realty*, 759 F.2d at 1044. Defenses based on lack of actual or proximate causation are insufficient under CERCLA and therefore must be stricken.

### 6. *The Government's Failure To Enforce Environmental Laws, Comply With CERCLA, Provide Notice, Mitigate Damages, And Enter Into A Contract With New Jersey*

All defendants assert defenses that plaintiff's claims are barred or limited because the Government did not comply with statutory or procedural prerequisites before bringing this action. For example, Cole's 29th defense alleges that plaintiff failed to exhaust its administrative remedies. American Cyanamid Group asserts that plaintiff failed to enforce its environmental laws and to protect the environment.[29] NL and AC assert that plaintiff failed to conform its actions to CERCLA's requirements,[30] and that plaintiff failed to give notice to defendants before starting response actions.[31] Many defendants allege that plaintiff failed to mitigate damages.[32] Finally, defendants assert that plaintiff cannot recover costs incurred before it entered into a contract or cooperative agreement with New Jersey pursuant to section 104(c)(3) of CERCLA.[33]

■ CERCLA imposes no statutory or procedural prerequisites to bringing a section 107(a) response cost recovery action. Section 107(a) expressly provides liability "[n]otwithstanding any other provision or rule of law," subject to the defenses in section 107(b). If the Government incurs response costs following a release or threatened release into the environment, such as is alleged to have occurred at the Helen Kramer Landfill, then CERCLA entitles EPA to recover its costs from responsible parties as set forth in section 107(a).

42 U.S.C. §§ 9604(a) and 9607(a). If defendants fall within one of the four categories of responsible parties under section 107(a), they are strictly liable to the Government for reimbursement of response costs. *See Shore Realty*, 759 F.2d at 1042, 1044.

The liability provisions of section 107(a) are independent of requirements in other provisions of CERCLA. *See, e.g., Thomas Solvent*, 714 F.Supp. at 1447 (striking defenses asserting lack of compliance with CERCLA, stating that "there are no[ ] procedural prerequisites in CERCLA to commence a cost recovery action"); *United States v. Miami Drum Services, Inc.*, 25 Env't Rep.Cas. 1469, 1479, 1986 WL 15327 (S.D.Fla.1986) ("this Court concurs with the majority rule that the liability provisions of Section 107(a) are wholly separate and independent from the requirements of Section 104 of CERCLA"). Thus, the alleged failure of the Government to comply with CERCLA or enforce environmental laws is not a defense to a section 107(a) cost recovery action and such allegations will be stricken.

■ Similarly, plaintiff is not required to give PRPs notice of a release or threatened release or opportunity to participate in response activities before incurring response costs. *Thomas Solvent*, 714 F.Supp. at 1447 (striking lack of notice defense, holding that "there are no notice requirements applicable to this [section 107] type of action"). Defenses alleging lack of notice therefore will be stricken.

■ CERCLA does not impose a duty upon the Government to mitigate response costs. Section 107(a) permits the Government to recover all response costs "not inconsistent with the national contingency plan (NCP)." 42 U.S.C. § 9607(a). "[T]he proper way to challenge particular response costs is through the means designed by Congress—inconsistency with the NCP." *Thomas Solvent*, 714 F.Supp. at 1451, n. 8. To challenge particular re-

---

**29.** AC 31(e, h, i, j, k, 1).

**30.** NL 13; AC 23, AC 24, AC 25 and AC 31(v, x).

**31.** NL 15 & 17; AC 8 & 31(y); M 21.

**32.** GM 15; NL 10; ICI 9; WR 12; A 19; O 15; AC 17; M 13; C 9.

**33.** AC 9; M 25.

sponse costs defendants must prove that these costs were inconsistent with the NCP. There is no duty to mitigate in CERCLA. This defense must be stricken.

### A. *Failure To Enter Into Contract With New Jersey*

 The defense that plaintiff cannot recover response costs incurred before it entered into a contract or cooperative agreement with New Jersey pursuant to section 104(c)(3) of CERCLA must be stricken, as there are no statutory procedural prerequisites to a section 107 action, and the liability provisions of section 107 are independent of those in section 104. *Thomas Solvent*, 714 F.Supp. at 1447; *Miami Drum*, 25 Env't Rep.Cas. at 1479.

Morton argues separately to support its 25th defense that "some or all of the costs were incurred by Plaintiff before Plaintiff entered into a contract or cooperative agreement with the state of New Jersey as required by section 104(c)(3) of CERCLA, 42 U.S.C. § 9604(c)(3)." Morton Answer at p. 7. Therefore, Morton argues, "if the [G]overnment undertook action at Kramer which it was not permitted to do under Section 104, and spent money from the Superfund which it is not permitted to spend, it is not now entitled to recover monies which Congress said it could not spend in the first instance." Morton Memo at p. 18.[34]

While acknowledging that district courts have held that liability under section 107 is completely independent from the provisions of section 104, Morton offers dicta from *Shore Realty*, 759 F.2d at 1046, as having "seriously questioned" that proposition. Morton Memo at 16–18. However, in holding that "inclusion on the NPL is not a requirement for the State [of New York] to recover its response costs," *id.* at 1046, *Shore Realty* explicitly did not reach the distinction between sections 107 and 104: "Instead of distinguishing between the scope of section 9607 and the scope of

section 9604, we hold that [NPL] listing is not a general requirement under the NCP." *Id.* We thus do not find *Shore Realty* persuasive on the issue.

In contrast, when the issue has been squarely addressed, district courts have found sections 104 and 107 to be distinct:

> The generator defendants err in attempting to link liability under § 107 to restrictions placed on Superfund expenditures under § 104. The clear language of § 107 negates any such interdependence of the two sections. Liability is imposed under § 107 for *"all* costs of removal or remedial action ... not inconsistent with the national contingency plan." Furthermore, liability is imposed *"notwithstanding* any other provision or rule of law, and subject only to the defenses set forth in subsection (b)." Another district court likewise concluded on the basis of this language that "Section 107(a) was meant to stand by itself; liability under it can be determined without the numerous inquiries [into § 104 and § 111 limitations on Fund expenditures] suggested by the defendant." *United States v. Reilly Tar and Chemical Corp.*, 546 F.Supp. 1100, 1118 (D.Minn. 1982).

*United States v. Wade*, 577 F.Supp. 1326, 1336 (E.D.Pa.1983) (emphasis original). The *Wade* court also relied on "an overview of the statutory scheme" in distinguishing sections 104 and 107:

> Section 107 ... is intended to impose liability on the responsible parties who created and/or dumped the hazardous wastes. The restrictions contained in § 104 are intended to protect the integrity of the Superfund and not [to] limit the [G]overnment's replenishing it by recovery from responsible parties. Thus, the fact that [G]overnment expenditures at the Wade site are not authorized by § 104 affects only the availability of Su-

---

**34.** To the extent Morton's argument might be construed to allege that the Government's response costs were inconsistent with the NCP, the Government indeed is not entitled to recover those costs. But that is irrelevant to Morton's

(or any other defendant's) liability under section 107, which limits the Government's recovery to costs "not inconsistent with" the NCP. 42 U.S.C. § 9607(a).

perfund money, and not the generator defendants' liability.

*Id.* We agree. Accordingly, for the above reasons, we will strike American Cyanamid Group's 9th and Morton's 25th defense.

### 7. *Joint And Several Liability Is Proper*

Several defendants assert that their liability should not be joint and several, but only proportionate to their contribution to the endangerment and costs at the Site.[35] Other defendants assert that joint and several liability is improper under CERCLA in this case, either because they acted independently of other defendants or because a "reasonable basis exists for apportioning the harm" at the Site.[36] The Government moves to strike all these defenses as legally insufficient, because the only defense to joint and several liability under CERCLA is divisibility of the harm.

CERCLA cases have employed the common law principle that where two or more persons are responsible for an indivisible harm, each is subject to liability for the entire harm, so that unless a defendant demonstrates that the harm is divisible, liability under CERCLA is joint and several. *See O'Neil v. Picillo,* 883 F.2d at 178 ("damages should be apportioned only if the defendant can demonstrate that the harm is divisible"); *Aceto,* 872 F.2d 1373 (8th Cir.1989); *Monsanto,* 858 F.2d at 171–72; *Wade,* 577 F.Supp. at 1338–39; *Miami Drum,* slip op. at 20 ("liability under Section 107(a) is joint and several *unless* a defendant or defendants can prove that the environmental injury is divisible *and* there is a reasonable basis for apportioning the harm") (emphasis original); *United States v. Conservation Chemical,* 589 F.Supp. 59,

63 (W.D.Mo.1984); *Chem–Dyne,* 572 F.Supp. at 810.

■■■ To establish divisibility, defendants must also offer a reasonable basis for apportioning the harm among defendants. For example, that a defendant sent a potentially identifiable volume of waste to the Site does not mean that its liability should be apportioned by volume, since volume alone does not reflect the individual and interactive qualities of the hazardous substances, nor the harms they create. *See Monsanto,* 858 F.2d at 172; *Thomas Solvent,* 714 F.Supp. at 1448 (striking affirmative defense that liability limited to pro rata share of damages where defendant acted separately from other defendants). We need not resolve whether defendants have offered a reasonable basis for apportionment, but only whether they have properly alleged that a reasonable basis for apportionment exists.

■■■■ We agree with the Government that only those defenses to joint and several liability that can be read to allege divisibility of the harm at the Site are appropriate. However, the Government takes a very narrow view of the proper articulation of divisibility, one which we believe is inconsistent with the requirement under Rule 12(f) that a defense may only be stricken when there are no possible set of facts under which that defense could affect the outcome of the proceeding. We note that in *Thomas Solvent,* a case which for the most part favors the government's positions on this motion, the court refused to strike defendant Grand Trunk's sixth affirmative defense "because it can be read to allege divisibility." *Id.* at 1449. The relevant part of that defense was that "plaintiff's damages can be apportioned."

---

**35.** WR 30; A 39; AC 31(b, t).

**36.** GM 24 ("there are distinct harms or a reasonable basis for apportionment of the harms suffered"); U 17 ("there are distinct harms or a reasonable basis for apportionment"); NVF 14 ("The relevant facts, circumstances and principles of law preclude . . . joint and several liability" against NVF); NVF 15 ("reasonable basis exists for apportioning the harm"); ICI 11 ("ICI has . . . acted independently and not in concert with any other defendant, thereby barring the

imposition of joint and several liability."); A 29 ("there are distinct harms or a reasonable basis for apportionment"); O 16 ("To the extent that nay or all of the defendants are found liable in this matter, joint and several liability is inappropriate because there are reasonable bases for apportioning the harms allegedly suffered."); AC 11 ("harm for which plaintiff allegedly incurred the Costs was and is divisible [and thus] . . . Defendants are not jointly and severally liable for the Costs").

*Id.* at 1448. The great majority of the defenses the Government seeks to strike here that relate to joint and several liability include the phrase a "reasonable basis exists for apportioning the harm" or harms at the Site. We must accept on this motion that such a reasonable basis exists, and if so, then defendants have set forth defenses that "can be read to allege divisibility," at least as clearly as the defense accepted by the court in *Thomas Solvent.* Moreover, we see no reason to disagree with the liberal construction accorded Grand Trunk's defense in *Thomas Solvent.* For it is one thing to require proof both of divisibility and a reasonable basis for apportionment as set forth in *Miami Drum,* but quite another to strike a defense, thus precluding such proof, merely because the defense is inartfully drawn and does not state both aspects of proof. On the contrary, we believe it sufficient that these defenses recognize the burden to prove divisibility, and we will not strike them.

Accordingly, of those defenses related to joint and several liability, we will strike WR 30, A 39, AC 31(b) & (t), NVF 14, and ICI 11. We will not strike GM 24, U 17, NVF 15, A 29, O 16, or AC 11.

### 8. Waste Is De Minimis Or Not Hazardous

■■■ Defendants allege that their activities, or the toxicity and amount of their wastes, were *de minimis.*[37] Two defendants assert that some materials disposed of at the Site did not contain hazardous substances as defined under CERCLA.[38] However, CERCLA does not permit a *de minimis* defense to liability. Therefore, these defenses will be stricken.

The release or threatened release "of *a* or *any* hazardous substance" is sufficient to establish liability. *United States v. South Carolina Recycling and Disposal, Inc.,* 653 F.Supp. 984, 992 (D.S.C.1984),

*aff'd in relevant part, United States v. Monsanto,* 858 F.2d 160 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (emphasis original); *Wade,* 577 F.Supp. at 1333 ("The only required nexus between the defendant and the site is that the defendant have dumped his waste there and that the hazardous substances found in the defendant's waste are also found at the site.").[39] That *some* of the materials defendants disposed of at the Site did not contain hazardous substances is irrelevant, so long as defendants disposed of other materials that did contain hazardous substances.

### 9. Failure To Join A Necessary Or Indispensable Party

■■■ Nearly all defendants assert that the government has failed to join necessary and indispensable parties.[40] Many assert that EPA has a policy of not enforcing CERCLA against municipal waste generators, a policy which violates other PRPs' rights to equal protection.[41] The same defendants assert that this policy amounts to rule-making without public notice and comment in violation of the Administrative Procedure Act.[42] (We address this alleged policy at length below as part of defendants' constitutional arguments.)

The Government is not required to sue all PRPs in a section 107(a) cost recovery action. *See Thomas Solvent,* 714 F.Supp. at 1450 (striking affirmative defense that Government failed to name necessary or indispensable parties); *Conservation Chemical,* 589 F.Supp. at 63; *United States v. A & F Materials Co., Inc.* ("*A & F*"), 578 F.Supp. 1249, 1261 (S.D.Ill.1984); *Dickerson,* 640 F.Supp. at 450 ("The courts have consistently rejected attempts by

---

37. GM 7; U 12; NVF 16; ICI 17; WR 32; A 7 & 22; O 14; AC 31(c); M 7 & 19; C 14.

38. GM 29; A 34.

39. As the government notes, while CERCLA does not provide a *de minimis* defense to liability, it does provide *settlement* procedures for *de minimis* defendants under section 122(g). EPA

has discretionary authority to exercise these procedures. 42 U.S.C. § 9622(g).

40. GM 5; U 11; NVF 3; ICI 10; WR 3; A 5; O 2; AC 31(r, q); M 5.

41. GM 30; U 20; NL 26; ICI 24; WR 35; A 5; O 17.

42. GM 31; U 20; NL 27; ICI 21; WR 36; O 18.

CERCLA defendants to compel the Government to round up every available defendant"). Rather, CERCLA provides in section 113(f) that defendants in a section 107(a) action may file contribution claims, thereby bringing in defendants not named by the Government. Defendants have done so here (including naming 17 local government authorities of the type defendants allege the Government has a policy of not naming in section 107(a) actions). Accordingly, defenses alleging that the United States has failed to join indispensable parties will be stricken.

### 10. *Equitable Defenses*

■ Various defendants assert numerous equitable defenses. The government concedes that some courts have permitted equitable defenses under CERCLA, but argues that the cases defendants cite either have been section 106(a) cases or have relied on other cases that misinterpreted the Supreme Court's opinion in *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). The majority of courts, including this court, have rejected equitable defenses to a section 107(a) cost recovery action as inconsistent with the explicit language of the statute and congressional intent. We will address first how *Romero–Barcelo* applies to section 107(a), then the differences between sections 106(a) and 107(a) as they pertain to equitable defenses.

### A. Applying *Romero–Barcelo* As A Guidepost For Restricting Equitable Jurisdiction

*Romero–Barcelo* addressed whether the Federal Water Pollution Control Act ("FWPCA"), 86 Stat. 816, as amended, 33 U.S.C. § 1251 *et seq.* (1976 ed. and Supp. IV), withdrew the district courts' equitable discretion in considering injunctive relief and alternatives to it.[43] 456 U.S. at 306–307, 102 S.Ct. at 1800–1801. The Court

found that under the FWPCA, "[a]n injunction is not the only means of ensuring compliance" because the FWPCA provides for fines and criminal penalties. *Id.* at 314, 102 S.Ct. at 1804. The Court looked at the entire "statutory scheme" of the FWPCA, found that "the scheme as a whole contemplates the exercise of discretion and balancing of equities," and concluded that Congress did not intend "to deny courts their traditional equitable discretion in enforcing the statute." *Id.* at 316, 102 S.Ct. at 1805. The Court also considered the FWPCA's legislative history and found that it "does not suggest that Congress intended to deny courts their traditional equitable discretion." *Id.* at 319, 102 S.Ct. at 1806. "We read the FWPCA as permitting the exercise of a court's equitable discretion, whether the source of pollution is a private party or a federal agency, to order relief that will achieve *compliance* with the Act." *Id.* at 318, 102 S.Ct. at 1806 (emphasis original).

In canvassing the commonplaces of injunctive relief, the Court noted that "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 312, 102 S.Ct. at 1803. The Court emphasized concern for the "public interest" in deciding whether to grant injunctive relief, *id.*, and concluded:

> The grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.

*Id.* at 313, 102 S.Ct. at 1803.

The Court noted that Congress can alter the traditional discretion afforded the dis-

---

**43.** Defendants cite two courts that have cited *Romero–Barcelo* as construing section 311 of the Clean Water Act, which the Government concedes is analogous to section 107 of CERCLA. *See United States v. Hardage*, 116 F.R.D. 460, 465 (W.D.Okla.1987); *Conservation Chemical*, 619 F.Supp. at 205; U.S. Reply Memo at 20. The Government argues, however, that *Romero–Barcelo* in fact construed section 505 of the

CWA, which authorizes citizen suits and "places no limits on a court's equitable discretion." U.S. Reply Memo at 20. We find that *Romero–Barcelo* construed the FWPCA *as a whole* and did not rely on any one section of the Act in concluding that numerous aspects of the statutory scheme demonstrated congressional intent not to limit the courts' equitable discretion under the Act.

trict courts: "Of course, Congress may intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles." *Id.* The Court requires

> clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

*Id.* (citation omitted).

### B. Construing Section 107 Under Romero–Barcelo

The language of section 107(a) is unambiguous: liability is imposed "[n]otwithstanding any other provision or rule of law, and subject *only* to the defenses set forth in subsection (b) of this Section." 42 U.S.C. section 9607(a) (emphasis added). "CERCLA section 107(a) provides the restrictive words referred to by the *Romero–Barcelo* Court." *Stringfellow,* 661 F.Supp. at 1062. Applying *Romero–Barcelo* to the plain language of section 107(a), we agree with *Stringfellow* and hold that the only affirmative defenses that can be asserted to liability under section 107(a) are those listed in section 107(b).[44] *Stringfellow,* 661 F.Supp. at 1062; *See* H.R.Rep. No. 253(I), 99th Cong., 2nd Sess. 1, 80 (1985), *reprinted in* 1986 U.S.Code Cong. & Admin.News 2835, 2862 ("the only defenses to liability remain those set forth in Section 107(b), [but] courts are to resolve such [contribution] claims [under section 113] on a case-by-case basis, taking into account relevant equitable considerations").

### C. The Differences Between Sections 106(a) And 107(a)

Section 106(a) permits the district court, in considering whether to impose an injunction, "to grant such relief as the public interest and the equities of the case may require," 42 U.S.C. § 9607(a), thereby explicitly permitting consideration of equitable factors. Section 107(a) just as clearly imposes liability "[n]otwithstanding any other provision or rule of law, and subject only to the defenses" in section 107(b).[45]

Defendants rely on the interpretation of *Romero–Barcelo* by two district courts in section 106(a) cases for the proposition that, since equitable defenses are appropriate under CERCLA section 106(a), they should be permitted under section 107(a). *See Hardage,* 116 F.R.D. at 465 (rejecting Government's argument that only defenses available under section 106 are three defenses in 107(b)); *Conservation Chemical,* 619 F.Supp. at 204 (since sections 106(a) and 107(a) share same standard of liability and section 106(a) provides for equitable defenses, equitable defenses should also be available under section 107(a)).

*Hardage* construed *Romero–Barcelo* as holding that "the full array of traditional equitable defenses [are] available under the injunctive provision" of section 311 of the Clean Water Act ("CWA"). The *Hardage* court found section 311 of the CWA analogous to section 7003 of RCRA. Since section 7003 claims involve equitable considerations, equitable defenses should be permitted under section 7003. 116 F.R.D. at 465. The court reasoned that equitable defenses should also be available under section 106(a). The court noted that even if the "standard of liability under CERCLA is strict liability, legal or equitable defenses are not precluded when utilized for other purposes, in connection with the enforce-

---

**44.** Moreover, as noted before, *Romero–Barcelo* "by its own description, affirmed a district court's exercise of equitable power to *'secure prompt compliance'* with federal law. 456 U.S. at 320, 102 S.Ct. at 1807 (emphasis added). This is a very different exercise of equitable power from that which defendants request here, where an enforcement action is sought to be defeated on equitable grounds." *United States v. Vineland Chemical,* 692 F.Supp. 415, 423 (D.N.J. 1988).

**45.** The question before the *Romero–Barcelo* Court involved injunctive relief, thereby making the Court's analysis more analogous to section 106—which explicitly permits consideration of equitable factors in the context of injunctive relief—than to section 107, which neither involves injunctive relief nor addresses equitable factors.

ment or interpretation of the statute." (The court did not elaborate how "the enforcement or interpretation of the statute" are distinct from liability, but cited *Conservation Chemical* to support the distinction, the sense of which escapes us.) Finally, the court noted that section 106(a) explicitly permits the court to consider "the equities of the case." *Id.*

In short, *Hardage* held that section 107 does not bar equitable defenses in a section 106(a) suit. Since the motion before us is in a section 107(a) action, *Hardage* is inapposite, since it did not reach the question of whether equitable defenses are permitted under section 107(b) in a section 107(a) action.

In *Conservation Chemical*, the district court interpreted *Romero–Barcelo* as permitting equitable defenses in CERCLA section 107(a) actions, as well as section 106(a) actions. *Id.* at 205. The court there adopted the findings by a Special Master, including that "the defenses enumerated in section 107[b] go solely to the question of strict liability." *Id.* The court concluded that "[e]quitable defenses are proper under CERCLA in determining liability." *Id.* The following is the sum of the court's reasoning as it traced a path to that conclusion:

> Section 106(a) specifically states that a court may "grant such relief as the public interest and the equities of the case may require." 42 U.S.C. § 9606(a). On its face, Section 106 incorporates traditional equitable defenses.

> . . . . .

> Section 101(32) provides that liability under CERCLA shall follow the liability standard of Section 311 of the Clean Wa-

ter Act. In a recent case, *Weinberger v. Romero–Barcelo*, 456 U.S. 305, [313] [102 S.Ct. 1798, 1803, 72 L.Ed.2d 91] (1982), the Supreme Court held that the traditional equitable defenses to injunctive relief must be considered in construing Section 311. That section, like Section 106, provides for injunctive relief subject to a limited number of defenses. The Supreme Court stressed that an injunction is an extraordinary remedy, noting that if a statute did not expressly abrogate equitable principles, they were available. . . .

> As equitable defenses are appropriate under Section 106 and the same standard of liability and associated defenses apply to Section 107, equitable defenses should be available under Section 107 also.

*Conservation Chemical*, 619 F.Supp. at 205. The court relied on the express language of section 106(a), which permits consideration of "the equities of the case," and the "extraordinary" nature of injunctive relief, to conclude that equitable defenses are permissible under section 106(a). The court ignored the absence of such language in section 107(a), and that section 107(a) does not involve injunctive relief, and held that equitable defenses are permissible under section 107. The court linked the two sections because they both involve an equitable remedy and impose strict liability. Therefore, the court reasoned, since section 106 permits equitable considerations, so should section 107.[46]

In *United States v. Price*, 577 F.Supp. 1103, 1113–1114 (D.N.J.1983), a section 106(a) case from this district, the court noted the restrictions on the affirmative defenses available under section 107 of CERCLA. Section "107 does not contain any qualifying language. Instead, it ap-

---

**46.** Another district court has found the same logic persuasive. In *Mottolo*, 695 F.Supp. at 627, the court reasoned that, "as a matter of logic, if two acts apply the same liability standard, and one act permits application of equitable defenses, so should the other. . . . CERCLA § 107 neither explicitly restricts, nor even refers to, equity jurisdiction. . . . [Section 107] defendants may assert equitable defenses." Oddly, *Mottolo* rejected a lack of knowledge defense on the basis that "[a] finding of poten-

tial responsibility under CERCLA § 107(a) is 'subject *only* to the defenses set forth in [§ 107(b) ]'." 695 F.Supp. at 626. The court did not explain how liability could at once be limited to section 107(b) defenses and also encompass equitable defenses, and we cannot explain the two conflicting positions. In any case, in light of what we read to be the clear language of section 107(a) limiting defenses to those three defenses listed in section 107(b), we disagree with the court's reasoning in *Mottolo*.

pears that Congress desired to use quite broad and unrestrained terminology [in defining liability under section 107].... Congress intended to impose a strict liability standard [in section 107(a) ] *subject only to the affirmative defenses listed in section 107(b)* " (emphasis added). We read *Price* as interpreting section 107(b) to permit only the three defenses listed under that section. *See United States v. Vineland Chemical*, 692 F.Supp. at 423.

Finally, equitable defenses "cannot be asserted against the government when it acts in its sovereign capacity to protect the public health and safety." *Stringfellow*, 661 F.Supp. at 1062 (striking affirmative defenses other than those listed in section 107(b)), *citing Chesapeake & Delaware Canal Co. v. United States*, 250 U.S. 123, 125, 39 S.Ct. 407, 407, 63 L.Ed. 889 (1919); *United States v. Shaner*, 1990 WL 115085, 1990 U.S.Dist. LEXIS 6893 *30 (E.D.Pa. 1990), (barring equitable defense of "unclean hands" because "equitable defenses may not be used to prevent the Government from enforcing its laws to protect the public interest"); *Western Processing* 734 F.Supp. at 939 ("unclean hands defense is not available as it is inconsistent with CERCLA's language [in section 107(a) ] and policies, and equitable defenses cannot apply against the governments acting in their sovereign capacity to assert public rights"); *United States v. Vineland Chemical Co.*, 692 F.Supp. 415, 423 (D.N.J. 1988) (same).

D. Equitable Defenses Unavailable Although A Section 107 Cost Recovery Action Seeks the Equitable Remedy of Restitution

*Conservation Chemical* described a section 107 response cost recovery action as one in which the Government seeks "the return of monies spent on behalf of others' legal obligation to clean up hazardous waste." *Id.* at 205. Thus, the Government seeks the equitable remedy of restitution. *Conservation Chemical* and other courts have therefore reasoned that, since the Government "seeks equitable relief, the defendants should not be barred from asserting equitable defenses." *Violet v. Picillo*,

648 F.Supp. 1283, 1294 (D.R.I.1986); *Conservation Chemical*, 619 F.Supp. at 206; *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1056 n. 9 (D.Ariz.1984), *aff'd*, 804 F.2d 1454 (9th Cir.1986). *Violet* cited *Mardan* for the proposition that "the defenses of section 107(b) cannot be afforded exclusivity without barring defendants from raising affirmative defenses such as res judicata, payment, and accord and satisfaction." 648 F.Supp. at 1295. But *Violet* also agreed with the *Mottolo* court that laches was not an equitable defense available to defendants in a suit brought by the Government in its sovereign capacity. *Id.* at 1295 n. 10.

While it may be logical to permit equitable defenses in an inherently equitable proceeding, and sections 106 and 113 both permit equitable considerations, the clear answer for section 107 is that Congress explicitly limited the defenses available to only those three provided in section 107(b). It is within the powers of Congress to so limit the district courts' discretion, *Romero–Barcelo*, 456 U.S. at 313, 102 S.Ct. at 1803, and Congress did so in section 107.

This conclusion is not at odds with a finding that Congress did not intend to limit equitable considerations in sections 106 and 113. Equitable considerations logically can be precluded from the imposition of strict liability, yet be permitted in the court's determination of apportionment. While negligence or due care by defendants are irrelevant to a finding of strict liability, they "may be relevant to issues of apportionment of liability among the defendants" in a contribution action. *Conservation Chemical*, 619 F.Supp. at 204. The exclusion of equitable defenses when considering liability under section 107(a) does not limit equitable considerations in section 113 contribution proceedings. Those PRPs named and found liable in a section 107(a) response cost recovery action may seek contribution from other PRPs under section 113. The court may consider then the equities in apportioning the recovery costs among the various PRPs.

### E. "Unclean Hands" And Other Equitable Defenses

The Third Circuit has recently rejected the use of doctrines such as caveat emptor and "unclean hands" in a CERCLA section 113 contribution action. In *Smith Land & Improv. Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3d Cir.1988), *cert. denied*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989), the Third Circuit found that these two doctrines "do not comport with congressional objectives [in enacting CERCLA]. In the words of one district judge, 'the "unclean hands" doctrine espoused in *Mardan Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1057 (D.Ariz.1984), *aff'd*, 804 F.2d 1454 (9th Cir.1986), has no place in CERCLA actions.' " *Id.* (citation omitted). *See also Shaner*, slip op. at 21–22; *Vineland Chemical*, 692 F.Supp. at 423 ("the equitable doctrine of unclean hands may not be asserted against the United States when it acts in its sovereign capacity to protect the public welfare").

▮ Defendant ICI argues that the Third Circuit in *Smith Land* relied in error on a district court opinion in concluding that the unclean hands doctrine is not available in CERCLA cases. ICI Supplemental Memo. at 8–9, n. 1. We disagree. The court merely quoted the district court and reached its own independent conclusion, that neither caveat emptor nor unclean hands may be asserted as affirmative defenses in a section 113 contribution action. Certainly those doctrines have no place in this section 107 action. Accordingly, we will strike those affirmative defenses that

can be read to allege caveat emptor or unclean hands.[47]

Similarly, we will strike defenses which allege: estoppel;[48] *in pari delicto* (Morton's 10th); waiver;[49] laches;[50] that the Government has failed to do equity (ICI's 7th); and that defendants acted in a proper and reasonable manner, exercised due care, complied with all laws and regulations concerning waste disposition, and otherwise conducted their operations reasonably, lawfully, and according to state of the art industry practices.[51] Nor will we allow the defense that defendants could not reasonably have foreseen that their hazardous substances would be disposed of at the Site.[52] Finally, we reject the defense that defendants have acted in good faith.[53] None of these defenses have any application to the Government's section 107(a) claim, although they may be relevant to defendants' section 113 contribution claim.

In short, we will strike all the many equitable defenses raised by various defendants.

### 11. *Constitutionality of CERCLA*

The cooperating defendants submit many constitutional objections to CERCLA, and ICI Americas submits its own list.[54]

### A. CERCLA Is Not Unconstitutional Because Retroactive

▮ The American Cyanamid Group's 14th defense, ICI's 22nd defense, and Cole's 24th defense, allege that the retroactive application of CERCLA violates their constitutional rights. ICI argues that one "fundamental principle" of due process "is

---

47. U 9, 10, 24; ICI 13; WR 6, 13; A 3 & 4; O 12; AC 22 & 31; GM 4, 11, 19; NL 11 & 12; ICI 5; M 4; C 5.

48. AC 31; GM 4, 11, 19; NL 5, 11, 12; ICI 5; WR 6 & 7; A 4 & 23; U 10; O 3; NVF 5; ICI 14; C 7.

49. GM 10; O 3; U 14; NL 5; NVF 5 & 6; ICI 6; WR 8; A 12; C 6.

50. GM 13; O 3; U 14; NL 5; NVF 4; ICI 4; WR 5; A 15; M 11; C 8.

51. GM 26; U 18, 21, 22; NVF 13; WR 15 & 16; AC 22; A 31, O 11.

52. WR 10; NVF 17; AC 22.

53. GM 28; U 19; WR 34; A 33.

54. ICI argues that CERCLA as written and applied violates equal protection and procedural and substantive due process: ICI 10 (equal protection violated by failure to join necessary and indispensable parties); ICI 21 (failure to enforce CERCLA against generators of municipal waste); ICI 22 (CERCLA is penal); ICI 23 (CERCLA exceeds powers of federal government); and ICI 24 (equal protection violated in failure to enforce CERCLA against clearly liable and financially viable parties). Other defendants offer similar defenses.

the right to fair notice that certain conduct is illegal"; CERCLA violates that principle by imposing liability retroactively for acts that were legal when done. ICI Memo at 17; ICI 22. Attacks on CERCLA because it imposes liability retroactively have been made and rejected without exception by many courts.

"[R]etroactive application of CERCLA does not violate due process.... Due Process is satisfied 'simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.... Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches.'" *United States v. Northeastern Pharmaceutical & Chemical Co.* ("*NEPACCO*"), 810 F.2d 726, 733 (8th Cir.1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987), *quoting Pension Ben. Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 429–430, 104 S.Ct. 2709, 2719, 81 L.Ed.2d 601 (1984); *Dickerson*, 640 F.Supp. at 451 ("The courts have consistently ruled that CERCLA's language and legislative history overrule the presumption against retroactive application of statutes, and have rejected similar constitutional attacks upon the Act."); *United States v. Ottati & Goss, Inc.*, 630 F.Supp. 1361 (D.N.H.1985), *aff'd in part and vacated in part*, 900 F.2d 429 (1st Cir.1990); *Conservation Chemical*, 619 F.Supp. at 213–214.

ICI makes its own arguments on the retroactivity of CERCLA: "[T]he [G]overnment has determined that ICI should be strictly liable not only for its own prior acts, but also for the prior lawful acts of *other* parties who were unrelated and even unknown to ICI. *See* ICI 12 & 25.[55] Such a scheme is the antithesis of the requirement that the law be 'known, or at least knowable' to those who are subject to its terms." ICI Memo at 17–18 (citation omitted) (emphasis original).

The seminal Supreme Court decision on the constitutionality of retroactive legislation is *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). *Turner Elkhorn* upheld the retroactive provisions of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, which required coal mine operators to pay former employees disabled by black lung disease, even though they had ceased working in the mines before the act was passed. The Court held that "our cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations.... This is true even though the effect of the legislation is to impose a new duty or liability on past acts." *Id.* at 16, 96 S.Ct. at 2893. The Court further held that the retroactive aspects of legislation must comply with due process, which the court found to mean that there must be a rational legislative purpose. *Id.* at 17, 96 S.Ct. at 2893. *See Pension Ben. Guaranty*, 467 U.S. at 730, 104 S.Ct. at 2718 ("due process ... met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose").

ICI concludes its facial constitutional attack on CERCLA by arguing that, "[b]y abandoning the requirement that liability bear some relation to the harm which the defendant causes, and by denying the defendant a meaningful opportunity to challenge the imposition of that liability, CERCLA has created a scheme that is neither rational nor equitable." ICI Memo at 26.

Like the Black Lung Benefits Act at issue in *Turner Elkhorn*, CERCLA was enacted to respond to a serious national health and environmental problem. A primary objective of CERCLA was "assuring that those responsible for any damage, en-

---

**55.** ICI 12: "The injury or damage complained of, if any, was proximately caused in whole or in part by the intervening and superseding acts of third parties, over whom ICI had no control, or right of control, and for whose conduct ICI is not legally responsible." ICI 25: "There is no release or substantial threat of release from the site of hazardous substances which were connected with ICI or any party for whose actions ICI is responsible. Therefore, ICI may not be held liable to the Government or to any other party."

vironmental harm, or injury from chemical poisons bear the costs of their actions." S.Rep. No. 96–848, 96th Cong., 2d Sess. 13 (1980), *reprinted in* 1 *CERCLA Legislative History*, at 320. Quite clearly, as many times as CERCLA's retroactive liability has been presented to courts and upheld without exception, no defendant can now prevail on this issue, and all affirmative defenses that rely upon this assertion must be stricken. *See, e.g., Monsanto,* 858 F.2d at 173–75; *NEPACCO,* 810 F.2d at 734 ("Cleaning up ... hazardous waste disposal sites is a legitimate legislative purpose, and Congress acted in a rational manner in imposing liability for the cost of cleaning up such sites upon those parties who created and profited from the sites"); *Thomas Solvent,* 714 F.Supp. at 1443–45; *United States v. Tyson,* 25 Env't Rep.Cas. 1897, 1907, 1986 WL 9250 (E.D.Pa.1986); *O'Neil v. Picillo,* 682 F.Supp. at 729; *Dickerson,* 640 F.Supp. at 451; *Conservation Chemical,* 619 F.Supp. at 176, 221–22.

#### i. "As Applied" Versus Facial Challenge

 General Metalcraft's 32nd defense, NL's 28th defense, Olin's 19th defense, and ICI's 22nd defense, all assert generally that CERCLA is unconstitutional as applied because it violates their due process rights.

ICI asserts that "there is no rational basis—and it is fundamentally unfair—to apply the statute retroactively" to alleged waste generators which, like ICI, sent waste to the Site but in no way "created" or "profited" from the waste site. ICI Memo at 19–20. ICI argues that the rationale applied by the many courts to have considered and approved the retroactive application of CERCLA is faulty. Those courts have concluded that Congress acted rationally in "imposing liability for the cost of cleaning up such sites upon those parties *who created and profited from the sites* and upon the chemical industry as a

whole." *NEPACCO,* 810 F.2d at 734 (emphasis added); ICI Memo at 19. ICI alleges that it is not one of those generators that "created" or "profited" from depositing its wastes at the Site. In essence, ICI argues that the only PRPs which can be said to have "created" or "profited" from the hazardous waste sites are the owners and operators of those sites. Neither the legislative history nor any court decision supports this conclusion, and we reject it.[56]

ICI notes that CERCLA's legislative history expressed desire to impose liability on those "responsible" for the waste. S.Rep. No. 96–848, 96th Cong., 2d Sess. 13 (1980), *reprinted in* 1 *Legislative History of CERCLA,* at 320 (1982), *quoted in* ICI Memo at 19. CERCLA casts a wide net of liability in defining who is "responsible" for hazardous waste at any given site. ICI takes exception to CERCLA's broad conception of those parties that are "responsible," but cannot support its argument that courts have misread congressional intent.

In striking an affirmative defense that CERCLA is unconstitutionally retroactive, *Thomas Solvent,* 714 F.Supp. at 1445, rejected defendants'

> attempt ... to reserve an "as applied" constitutional challenge for later fact-finding: "Defendants instead seem to argue that the rational relationship test applicable to due process challenges is somehow fact-dependent. This argument misperceives substantive due process analysis, and without any submission by the defendant to the contrary, there simply is no basis for reserving this issue to be revisited at a later date."

*Id., quoting Miami Drum,* 1986 WL 15327, at p. 23.

We will therefore strike those affirmative defenses alleging that CERCLA is un-

---

**56.** Defendants cite numerous cases for the proposition that "CERCLA [is] a hastily and inadequately drafted statute with a confusing and contradictory legislative history." Joint Memo at p. 17. Whatever haste may have been involved in drafting the statute as a whole, and however inadequate the results, that charge

does not render the statute invalid, and neither ICI nor the cooperating defendants have directed the court to any part of the legislative history that supports the conclusion that CERCLA was aimed only at owners and operators of hazardous waste sites.

constitutional as applied here.[57]

### B. CERCLA Is Not Penal And Thus Not Ex Post Facto

██ Defendants W.R. Grace in its 11th defense and ICI in its 22nd defense allege that CERCLA is penal in nature and hence an *ex post facto* law. All courts to have considered the issue have rejected these arguments. *See Monsanto*, 858 F.2d at 174–75 ("CERCLA does not exact punishment. Rather it creates a reimbursement obligation on any person judicially determined responsible for the costs of remedying hazardous conditions at a waste disposal facility. The restitution of cleanup costs was not intended to operate, nor does it operate in fact, as a criminal penalty or a punitive deterrent."), *cert. denied*, 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989); *Tyson*, 25 Env't Rep.Cas. at 1909 ("There is no question that CERCLA furthers a legitimate and important nonpunitive legislative purpose: to clean up hazardous waste disposal sites which pose a threat to human life"); *Conservation Chemical*, 619 F.Supp. at 176, 214.

CERCLA is not a penal statute. We decline to be the first court to hold that CERCLA is penal in nature and therefore an *ex post facto* law. We will strike the above affirmative defenses, whether considered as facial or as applied attacks on CERCLA.

### C. Due Process

██ ICI attacks the entire procedural scheme of CERCLA: "Viewed as a whole, this statutory scheme violates procedural due process because a party is denied a meaningful opportunity to have his case considered by a federal court.... The Fifth Amendment simply cannot be reconciled with a system where liability is determined in advance by Congress and an executive agency, rather than by a federal court." ICI Memo at 16; ICI 22. ICI makes a facial attack here rather than attacking CERCLA as applied to it in this case.

ICI couches the following defenses as brought under procedural due process: 8 (Government consented to and acquiesced in the conditions at the Site); 9 (failure to mitigate damages); 12 (intervening and superseding act of third parties); 13 (plaintiff's contributory negligence); 14 (estoppel); 19 (in pari delicto); and 22 (unconstitutional as applied).

As ICI concedes, "[l]iability is strict, and there is no requirement that the [G]overnment establish any causation between the defendant's conduct and the alleged harm." *See Shore Realty Corp.*, 759 F.2d at 1044 (CERCLA contains no causation requirement). ICI Memo at p. 15.

ICI states that "no court has yet addressed the *cumulative* effect of the CERCLA provisions on a defendant's constitutional rights." *Id.* at 12 (emphasis original). From this statement the court infers that ICI believes its constitutional arguments have greater weight taken as a whole than individually, and that the court must embark on "cumulative" analysis to appreciate the full constitutional impact of ICI's defenses. The government responds:

> The sum of ICI's constitutional arguments, however, is no more than its individual parts, and, therefore, ICI's claim is insufficient as a matter of law. After considering and rejecting each of the constitutional challenges ICI makes here, the court in *Conservation Chemical* opined that "defendants' naked assertions of 'collective' unconstitutionality do not overcome the presumption of constitutionality which attaches to [CERCLA]." 619 F.Supp. at 222. ICI's challenge must likewise be rejected.

U.S. Reply Memo at 18 n. 13. We agree. Constitutional violations must stand on their own. Claims which measured independently do not amount to constitutional violations cannot somehow attain constitutional status when considered together.

██ Morton's 21st defense asserts that because defendant was not notified it was a PRP before the EPA signed the ROD, defendant was "precluded ... from commenting upon or participating in the selection of

---

**57.** GM 32; NL 28; ICI 22; WR 11; O 18.

the remedial action at the Helen Kramer Landfill. This has resulted in a deprivation of ... [Morton's] substantive and procedural due process rights." Morton cites this court's opinion in *United States v. Rohm and Haas Co.*, 669 F.Supp. 672, 682–84 (D.N.J.1987), for the proposition that, where procedural due process rights were potentially involved when EPA failed to give PRPs notice and a meaningful opportunity to comment on the proposed remedial action, defendants were entitled to supplement the administrative record. Morton Memo at p. 15. From the court's opinion in *Rohm and Haas,* Morton argues that its 21st defense "is far from insufficient as a matter of law." *Id.*

The motion before the court in the above opinion in *Rohm and Haas* addressed "the appropriate standard of review [under SARA] of the [EPA's] choice of a remedial response." *Id.* at 675. We explicitly stated that among "the issues that [were] *not* in dispute" in that motion was "whether the defendants are liable parties." *Id.* Thus, the failure to provide notice as it might affect defendants' liability was not before the court.

*Rohm and Haas* quoted at length from section 113(k) of SARA, which sets forth the requirements for promulgation of an administrative record in CERCLA actions and procedures for PRPs to participate in the selection of appropriate remedial actions. 42 U.S.C. § 9613(k). Section 113(k) provides, in relevant part:

> (D) Potentially responsible parties. The President shall make reasonable efforts to identify and notify potentially responsible parties as early as possible before selection of a response action. *Nothing in this paragraph shall be construed to be a defense to liability.*

42 U.S.C. § 9613(k)(2)(D) (emphasis added).

Here, in contrast, Morton raises failure to provide notice as a defense to liability, arguing that such failure violated Morton's due process rights. Neither *Rohm and Haas* nor the plain language of section 113(k)(2)(D) supports Morton's effort to make such a failure a defense to liability,

and we reject the attempt. That defense will be stricken.

■ CERCLA satisfies substantive due process. *See, e.g. Monsanto,* 858 F.2d at 173–74 (retroactive application and potentially harsh consequences of CERCLA do not violate due process clause); *NEPACCO,* 810 F.2d at 734 (retroactive application of CERCLA does not violate due process). *Cf. Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (retroactive liability on coal mine operators for black lung benefits to former miners does not violate due process because such legislative action meets rational basis test).

CERCLA meets the requirements of procedural due process: "[B]ecause the liability of any PRP under Section 107(a) is determine[d] by an appropriate federal court, such parties are receiving notice and an opportunity to be heard as required by the strictures of procedural due process." *Shaner,* 1990 WL 115085; 1990 U.S. Dist. LEXIS 6893 *31 (E.D.Pa.1990).

### D. Equal Protection

#### i. The EPA's Discretion To Select PRPs Does Not Violate Equal Protection

■ As defendant ICI concedes, because CERCLA has been interpreted to provide for joint and several liability, *see, e.g., Wade,* 577 F.Supp. at 1337–38, the EPA is not required by CERCLA to seek recovery from each PRP. The EPA may select some PRPs from a group of similar PRPs and impose upon them the full cleanup burden, even when the EPA knows that non-named PRPs may have been primary waste generators at the site. *See, e.g., A & F,* 578 F.Supp. at 1260–61.

Defendant ICI asserts that "[t]his discriminatory selection procedure is obviously the result of a conscious, deliberate policy within the EPA to ease its own administrative burden, rather than to ensure that *all* those who created the perceived waste problem pay for its remediation. This is surely the type of intentional, capricious enforcement that the equal protection guarantee was designed to prohibit." ICI Memo, at pp. 13–14.

ICI's counsel submitted the identical language in making its equal protection argument on behalf of defendant General Battery Corp. ("GBC") in *Shaner*, 1990 WL 115085, 1990 U.S. Dist. LEXIS 6893, *32. The *Shaner* court granted summary judgment for the government on GBC's constitutional and equitable defenses. The court quoted the above passage in full, then rejected the argument. We agree.

### ii. EPA's Alleged Policy Not To Sue Municipalities

Many defendants [58] allege that EPA "has a policy of enforcing CERCLA liability against industrial generators of hazardous substances but not enforcing the same liability against municipal generators of hazardous substances.... EPA has a policy of *excluding* an entire class of defendants, namely municipalities.... [Plaintiff may not] exclude an entire *class* of potentially liable defendants." Joint Memo at pp. 18-19 (emphasis in original). This policy denies defendants equal protection, and was adopted in violation of the procedures of the Administrative Procedure Act ("APA"). While defendants concede that EPA need not join all PRPs in a CERCLA section 107(a) response cost recovery action, they assert that a policy that exempts an entire class of waste generators runs afoul of equal protection guarantees.

The Government responds that no such policy exists. "EPA expressly denies that it follows a policy of refusing to enforce CERCLA against municipal generators or transporters of waste." U.S. Reply Memo, at p. 12. However, for purposes of this motion we must accept as true that such a policy exists. The Government acknowledges promulgating an Interim Municipal Settlement Policy that does treat municipal waste differently from industrial waste. The Government argues that its interim policy distinguishes between classes of *waste*—municipal versus "commercial, in-

stitutional, or industrial"—rather than classes of waste *generators*—municipalities versus private companies. The Government describes its policy at length, but we are restricted to the pleadings on this motion, and so will treat with the policy solely as it is alleged by defendants, one that excludes municipalities from section 107(a) actions.[59]

■ The Government argues that to satisfy equal protection, its policy toward municipal waste (and for our purposes, toward all municipalities) must show "some rationality in the nature of the class singled out." *Rinaldi v. Yeager*, 384 U.S. 305, 308-09, 86 S.Ct. 1497, 1499-1500, 16 L.Ed.2d 577 (1966). *See also United States v. Carolene Products Co.*, 304 U.S. 144, 152, 58 S.Ct. 778, 783, 82 L.Ed. 1234 (1938) ("regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless ... it is of such a character as to preclude the assumption that it rests on some rational basis"). The question is whether the classification serves CERCLA's intended purposes: "The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose." *McLaughlin v. Florida*, 379 U.S. 184, 191, 85 S.Ct. 283, 287, 13 L.Ed.2d 222 (1964). While this policy is not a "classification[ ] drawn in a statute"—since it is extraneous to CERCLA itself—it nevertheless relates to CERCLA because it is a policy drawn by the agency entrusted with enforcing CERCLA. To be rational, then, the policy must be reasonable in light of CERCLA's purposes.

■ EPA explains why it treats municipal waste differently from "commercial, institutional, or industrial" waste:

[B]ased on our experiences at Superfund sites, especially municipal landfills, we believe that it is generally not a cost-ef-

---

**58.** U 20; NL 26; ICI 24; WR 35; O 17; AC 31; M 20, 22; C 19.

**59.** While the court is bound to accept defendants' factual allegations, namely that the Government has a policy to not enforce section 107(a) against municipalities, we are not bound

to accept defendants' assertions that this policy violates both their equal protection rights and the Administrative Procedure Act, which are legal conclusions. We will consider the Government's arguments regarding this policy only to the extent relevant to deciding whether the policy violates equal protection and the APA.

fective use of our enforcement resources to pursue those generators/transporters whose only contribution at a Superfund site appears to have been substances that may have been contaminated only with relatively small quantities of household hazardous waste (e.g. municipal solid waste). The resource-intensive nature of obtaining sufficient evidence to demonstrate the presence of household hazardous waste as well as the potentially increased transactions of settlement and/or litigation far outweigh the possible benefit the Government may derive from such parties. The Agency believes that its enforcement resources are better spent on pursuing other potentially responsible parties to achieve the cleanups needed to effectively implement the Superfund program and to protect human health and the environment.

54 Fed.Reg. at 51073.

The published interim policy does not exclude municipalities from eligibility as PRPs in a CERCLA response cost recovery action. It does, however, exclude municipalities unless the hazardous waste they generated or transported can be shown to have arisen from "commercial, institutional or industrial" sources. Typical "household" hazardous waste, given the alleged difficulty of identifying it among other wastes, will not cause a municipality to be named as a PRP. It is possible that the published interim municipal policy will have the effect of excluding all municipalities from being named as PRPs, and thus create the situation alleged by defendants, where an entire class of PRPs is exempt from suit under CERCLA, by choice of the EPA. We accept that the policy has had this effect, and even that it was intended to exclude municipalities from section 107(a) enforcement actions.

The EPA's cost-benefit analysis articulated above is the same basis EPA has always offered for exercising its discretion to select defendants in section 107 cost recovery actions, and is a rational basis for not pursuing generators and transporters of municipal solid waste: Obtaining evidence of the presence of household hazardous waste is more difficult than finding evidence of other types of hazardous waste. When coupled to limited enforcement resources, pursuit of other PRPs is a more efficient means to recover the costs expended to clean up Superfund sites. EPA's rationale for excluding municipal waste is rationally related to efficient use of its enforcement resources and to cleaning up Superfund sites. See Tr. 10, 17–20.

We note, too, that pursuit of private entities responsible for generating or transporting hazardous waste to Superfund sites is rationally related to CERCLA's aim of imposing liability for the cost of cleaning up such sites upon those who have profited from trafficking in and improperly disposing of hazardous substances. Municipalities cannot be said to have profited from the generation and disposal of hazardous substances.

But we must also recognize that CERCLA's statutory scheme explicitly contemplates that PRPs such as municipalities who have not been named defendants in section 107 actions, can be brought into the action by defendants seeking contribution, as has happened in this case. The sole effect of the Government's policy then, is to alter the posture in which municipalities become defendants in CERCLA actions. We cannot assume that the Government intends to exclude and so insulate municipalities from liability for their contributions of hazardous substances to this or any site, because the statute itself permits other PRPs to bring in municipalities as defendants. Thus, the Government's choice to name or not name municipalities cannot be assailed as one governmental agency seeking to protect another governmental body from liability. Under CERCLA, no generator is beyond liability, not even the Government itself. Rather, the statutory scheme grants EPA discretion to select which PRPs to sue to recover its response costs, and leaves the burden to those named PRPs to then name other PRPs as defendants in contribution actions. We cannot impute to the Government a sinister purpose to insulate municipalities at the cost of private waste generators, because no insulation is possible.

It is true that municipalities as a class under this policy thus avoid joint and several liability, and can be held liable only for their apportioned share of response costs. Does it violate defendants' equal protection rights for the Government to select a class of possible defendants whose potential liability thus will be only several, rather than joint and several? Accepting that the policy exists, would any set of facts produced in discovery lead the court to conclude that the policy violates equal protection? Courts are now deaf to arguments that the Government should have chosen different or more PRPs to name as defendants in a section 107 action. Should our ears prick up when the Government excludes a *class* of PRPs on the same basis, namely that other defendants offer easier, quicker recovery? We think not.

We find that the alleged policy is consistent with EPA's broad discretion to select PRPs to recover its response costs, and rationally related to the statute's purpose of efficient and rapid reimbursement of the Superfund. The policy does not violate defendants' rights to equal protection, and we will therefore strike those affirmative defenses based on that policy.

a. Is Policy Not To Sue Municipalities A "Rule" That Violates The Administrative Procedure Act, Or A "General Statement Of Policy" Exempt From The Act?

Defendants argue that the alleged policy of excluding municipalities constitutes *de facto* rule making, subject to and in violation of the notice-and-comment requirements of the APA, and that this failure to comply with the APA violated defendants' due process right to be heard.

The Government makes two arguments in response. First, pursuant to section 113(a) of CERCLA, judicial review of the rule would be proper only before the Court of Appeals for the District of Columbia: "Review of any regulation promulgated under this chapter may be had upon application by any interested person *only* in the Circuit Court of Appeals of the United States for the District of Columbia." 42 U.S.C. § 9613(a) (emphasis added).

Second, the Government argues that the alleged enforcement policy is a "general statement of policy," not subject to the notice-and-comment provisions of section 553 of the APA. 5 U.S.C. § 553(b)(A).

The APA defines a "rule" as

the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency ...

5 U.S.C. § 551(4). "Clearly, an agency statement describing conduct that the agency intends to follow in the future is a statement of 'future effect designed to ... prescribe law or policy ... or procedure' and thus a rule." *Waste Management, Inc. v. United States Environmental Protection Agency*, 669 F.Supp. 536, 539 (D.D.C.1987). If the EPA's interim policy falls within the APA's exception for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(A), it is exempt from the notice-and-comment requirement. *Id.* at 539. Plaintiff contends that the rule at issue here is a " 'general statement of policy,' which is defined as a statement that merely expresses, 'without force of law,' the agency's 'general intentions for the future.' " *Id.* (Citation omitted.)

A seminal case in this area described a "general statement of policy" as one that

does not establish a "binding norm." It is not finally determinative of the issues or rights to which it is addressed. The agency cannot apply or rely upon a general statement of policy as law because a general statement of policy only announces what the agency seeks to establish as policy. A policy statement an-

nounces the agency's tentative intentions for the future.

*Pacific Gas & Elec. Co. v. Federal Power Com.*, 506 F.2d 33, 38 (D.C.Cir.1974) (footnote omitted).

After surveying cases in the area, another court in this district summarized the distinction between a rule and a general statement of policy as follows:

> Simply put, agency actions which do not afford those individuals charged with carrying out agency responsibilities flexibility to handle agency matters on a case-by-case basis, may properly be viewed as substantive rules subject to invalidation for noncompliance with the requirements of the APA.

*Jersey City v. Pierce*, 669 F.Supp. 103, 108 (D.N.J.1987).

The Government argues that under the interim municipal policy, even if EPA would not enforce CERCLA against municipal generators absent site-specific information on the wastes generated or transported by the municipality—or indeed that EPA would not sue municipalities at all in CERCLA response cost recovery actions—that statement of policy, which announces the EPA's general intentions for the future, would not be subject to notice and comment under the APA. We agree. This policy merely "announces the agency's tentative intentions for the future," and is not a "binding norm" which eliminates agency discretion on a case-by-case basis.

Finally, the Government argues that defendants are not prejudiced by the alleged policy, since Rule 14 permits them to implead other PRPs, and section 113 of CERCLA explicitly provides a right to seek contribution from other PRPs. Indeed, Congress conferred the right to seek contribution from other PRPs in recognition of the impact joint and several liability could have upon PRPs selected by the Government and found liable for recovery. *See* H.R.Rep. No. 253(I), 99th Cong., 2nd Sess. 1 (1985), *reprinted in* 1986 U.S.Code Cong.

& Admin.News 2835, 2861–62. The right to seek reimbursement from other PRPs of response costs paid spreads liability more equitably among all PRPs. *See Smith Land*, 851 F.2d at 90.

We find that the alleged policy not to sue municipalities is not a rule promulgated in violation of the APA, but rather is a general statement of policy not subject to notice and comment. We do not reach the jurisdictional question of whether challenge to the rule would be appropriate in this court. Therefore, we will strike the relevant affirmative defenses.[60]

### 12. *Propriety of Response Costs*

██ Many defendants assert generally that the response costs incurred by plaintiff are improper costs under CERCLA.[61] Several defendants also assert that any future costs are not recoverable as they are remote, speculative and contingent.[62] However, the only criterion for the recoverability of response costs under CERCLA is whether costs are consistent with the National Contingency Plan (NCP). All response costs not inconsistent with the NCP are recoverable. 42 U.S.C. § 9607(a)(4)(A). Defendants have the burden to prove that response costs are inconsistent with the NCP. *NEPACCO*, 810 F.2d at 747–48. Therefore, terms used by defendants in their affirmative defenses such as "proper" or "improper," "remote, speculative and contingent," and "unreasonable, duplicative and not cost-effective," do not state an appropriate challenge to the propriety of the government's response costs, and will be stricken.

██ Moreover, a defense that the government's response costs are inconsistent with the NCP is only a defense to the recoverability of particular response costs, but not to liability. *United States v. Southeastern Pennsylvania Trans. Authority*, 24 Env't Rep.Cas. 1860, 1864, 1986 WL 7565 (E.D.Pa.1986) (consistency with NCP goes more to recoverability of costs than to existence of claim under section

---

**60.** NL 27; U 20; ICI 21; WR 36; O 18.

**61.** GM 12, 18, 23; U 16; NL 16; WR 18 & 23; A 8, 14, 28; O 5; AC 5 & 16; M 15.

**62.** WR 14; NL 21; ICI 27; AC 7; C 24.

107); *United States v. Medley,* 25 Env't Rep.Cas. 1315, 1319 (D.S.C.1986) (consistency with NCP not necessary element of liability under section 107).

Finally, while the government may not recover costs not yet incurred, it may obtain a declaratory judgment pursuant to section 113(g)(2) that defendants are liable for future costs not inconsistent with the NCP. (*See* Section III(d) above.) Thus, defenses that future costs are unrecoverable are both premature and insufficient and will be stricken.

### 13. *Statute of Limitations*

Defendants assert that the government's claims are barred by the applicable statute of limitations.[63] The applicable statute of limitations under CERCLA is that a cost recovery action must be brought within three years of completion of the removal action or within six years of beginning physical on-site construction of the remedial action. 42 U.S.C. § 9613(g)(2). This limitations provision operates prospectively only and has no retroactive application to claims accruing before its enactment on October 17, 1986 as part of SARA. *Merry v. Westinghouse Electric Corp.,* 684 F.Supp. 852, 857 (M.D.Pa.1988); *T & E Industries, Inc. v. Safety Light Corp.,* 680 F.Supp. 696 (D.N.J.1988); *United States v. Moore,* 698 F.Supp. 622, 625–27 (E.D.Va. 1988).

According to the complaint, the RI/FS, a removal action, was completed in September 1985. Comp. ¶ 29. No physical on-site construction of the remedial action has taken place yet. As to pre-existing claims, the three-year limitations period begins to run on the effective date of SARA's enactment, October 17, 1986. *T & E,* 680 F.Supp. at 704; *Moore,* 698 F.Supp. at 625–26 ("retrospective application of § 9613(g) would subvert Congress' intent to hold responsible parties liable for environmental hazards"). The action was filed within three years of the enactment of the statute of limitations provision, and is therefore timely. Accordingly, these defenses will be stricken.

### 14. *Subject Matter Jurisdiction*

Several defendants assert that the government's claims are barred for lack of subject matter jurisdiction.[64] Paragraph 2 of the complaint alleges jurisdiction under section 113(b) of CERCLA, 42 U.S.C. § 9613(b) (federal district courts "shall have exclusive original jurisdiction over all controversies arising under this chapter"), as well as under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (United States a plaintiff). The court has subject matter jurisdiction, and we will strike these defenses.

### 15. *Adopting Defenses Raised By Other Defendants*

Many defendants attempt to adopt all defenses asserted by all other parties.[65] To the extent these defenses attempt to adopt defenses raised by other parties that will be stricken, these defenses, too, will be stricken.

## IV. CONCLUSION

For the above reasons, the government's motion to strike affirmative defenses will be granted, with exceptions as noted for defenses alleging divisibility.

An appropriate order has been entered.

---

**63.** GM 17; U 15; NL 6 & 23; NVF 2; ICI 3; WR 4; A 21; O 4; AC 12; M 14; C 13.

**64.** GM 2; U 6; NL 3; ICI 1; WR 1; A 2; M 2.

**65.** GM 33; U 26; NL 29; NVF 18; ICI 28; WR 37; A 42; AC 31; M 35; C 21.